## CITY OF SAN ANTONIO v. ASTORIA.
### No. 9389.
#### Court of Civil Appeals of Texas. San Antonio.
##### Dec. 13, 1933.
##### Rehearing Denied Jan. 24, 1934.

W. C. Davis, T. D. Cobbs, Jr., and Jack Davis, all of San Antonio, for appellant.

Hirshberg, Mueller, Powell & Green, of San Antonio, for appellee.

SMITH, Justice.

The city of San Antonio instituted and prosecuted a statutory proceeding to condemn certain real property of P. A. Astoria for street widening purposes. The regularity and validity of the proceeding is not in question here.

Commissioners appointed to assess the damages for the taking of the property awarded Astoria $7,500 therefor. The city was satisfied with the award and tendered the amount thereof to Astoria, who rejected the tender and appealed from the award.

In pursuance of the statutory procedure, the city, in order to enter into possession of the condemned property pending the appeal, deposited the amount of the award with the county clerk, who, it is alleged, appropriated the fund to his own uses, so that it was not forthcoming upon the termination of the appeal, in which the award was increased to $10,000 with interest. Astoria thereupon brought this action for mandamus to require the city to pay the award in full. The mandamus was granted, and the city has appealed from the order thereon.

The deposit of the award with the county clerk was made under and by virtue of the provisions of article 3268, R. S. 1925, as follows:

"If the plaintiff in the condemnation proceedings should desire to enter upon and take possession of the property sought to be condemned, pending litigation, it may do so at any time after the award of the commissioners, upon the following conditions, to-wit:

"1. It shall pay to the defendant the amount of damages awarded or adjudged against it by the commissioners, or deposit the same in money in court, subject to the order of the defendant, and also pay the costs awarded against it."

It is the contention of appellant that when it deposited the amount of said award with the county clerk, such deposit fully and finally satisfied the constitutional requirement that no person's property shall be taken for a public use until adequate compensation therefor "shall be first made, or secured by a deposit of money." Const. art. 1, § 17.

The contention is, in short, that the deposit of the award with the county clerk amounted in law to payment of the award to appellee and put an end to appellant's liability to appellee for the amount thereof; that it was not incumbent upon appellant to keep the deposit good; and that the loss of the fund through the malfeasance of the deposi-

tory, the county clerk, should fall, not upon appellant, but upon appellee.

After some hesitation and much consideration and investigation, a majority of this court have reached the firm conclusion that both the justice and the law of the case are against appellant's contentions. The authorities are in confusion, as well as in actual conflict, upon the question. The precise point has not been decided by the appellate courts of Texas, although it has been written upon, adversely to appellant, in obiter dicta of the Beaumont Court of Civil Appeals, in Texarkana Ry. v. Brinkman, 288 S. W. 852, in which the judgment of that court was affirmed by the Supreme Court, without an expression upon that point, in 292 S. W. 860.

All decisions of the question must be anchored to the constitutional and inviolable inhibition against the taking of private property without first adequately compensating the owner.

■ It is true that the method of making compensation has been intrusted to the Legislature, but such method, when prescribed, must be so construed as to preserve inviolate to the owner the absolute assurance of compensation before he is required to surrender possession of his property, for, as said by our Supreme Court in an early case, "the making of compensation must be as absolutely certain as that the property is taken." Buffalo Bayou, B. & C. Ry. v. Ferris, 26 Tex. 588.

So must it be kept in mind that the owner is always an involuntary party to the proceeding to take his property, since such proceeding can arise only in the contingency of his refusal of consent to the taking.

By this process the taker assumes all the burden of the proceeding, which he must strictly pursue, step by step, until the owner is "adequately compensated," "in money."

■■ It is true, also, that the Legislature, under the grant of authority to prescribe appropriate proceedings for taking, may lawfully provide the method of securing payment of compensation to the owner pending the final adjudication of the right to take and the amount of compensation, but this grant does not carry with it the right to prescribe any procedure which would lessen the absolute obligation of the taker to compensate the owner, "in money," for the property taken. Upon this conclusion we hold that when appellant deposited the award with the county clerk, the deposit was a continuing one, to be kept good by appellant against loss through the insolvency or defalcation of the depository. Lewis Em. Dom. (3 Ed.) §§ 680, 842; Buffalo Bayou, B. & C. Ry. v. Ferris, supra; Texarkana Ry. v. Brinkman, supra; Burns v. Ry., 110 Iowa, 385, 81 N. W. 794; Brown v. Ry., 64 Neb. 62, 89 N. W. 405; Id., 66 Neb. 106, 92 N. W. 128; White v. Ry., 64 Iowa, 281, 20 N. W. 436; Clelland v. McCumber, 15 Colo. 355, 25 P. 700, 701.

It is true that in Ackerman v. Huff, 71 Tex. 317, 9 S. W. 236, 238, our Supreme Court said that deposit with the county clerk satisfied "the constitutional requirement that 'compensation shall be first made or secured by a deposit of money,'" but that expression was used in discussing a question of evidence, in a case in which there was no contention that the award was not finally paid over to the landowner, and the implied holding was therefore mere dictum. The maximum effect to be given the expression is that the deposit was sufficient compliance with the constitutional requirement to permit the condemner to enter into possession of the property to be taken, pending final adjudication of the right to take and the amount of the award to be made. It is perhaps true, too, that a different rule than that here announced may have been made in other states, but it cannot be adopted in this state, in view of our constitutional provisions. Oliver v. Ry., 83 Ga. 257, 9 S. E. 1086; Johnson v. Ry., 45 N. J. Law, 454, 17 A. 574; State v. Superior Ct., 80 Wash. 417, 141 P. 906.

The conclusion we have stated is supported by a rational analysis of the statute, which does not make the deposit a condition to the *taking* of the property absolutely, but only to *possession* "pending" the owner's appeal from the initial award. The statute does not provide that the deposit shall constitute *payment*, but that it shall be *security* for ultimate payment. It does not provide that upon making the deposit the condemner shall have the property, absolutely, but simply that he may have possession until the litigation thereon shall end with a final adjudication of the amount of compensation to be paid. The obvious inference deducible from the statute is that this temporary possession is subject, after all and as a matter of course, to the obligation of the condemner to "adequately compensate" the owner for his property. To hold otherwise, and construe the statute to mean that a deposit shall constitute actual payment, would render the act invalid, as in contravention of the constitutional inhibition against the taking of private property for a public use, without compensating the owner therefor.

We need not decide the question of whether the property owner has the privilege of demanding and taking the deposit pending his appeal from the initial award. Our courts are in conflict in their decision of this question. It is probably true that when an appealing property owner appropriates the deposit pending the disposition of his appeal, he thereby abandons his appeal and will be held to have no further remedy. But such is not the case here, for here the owner elected to pursue the alternative remedy, obviously open to him, to reject the deposit and consistently

pursue his appeal to a conclusion, and in such case surely the constitutional provision protects him against the threatened confiscation until he is "adequately compensated" for the property taken. To hold otherwise would be to deny him the right of appeal, or force him, in the alternative, to risk the security with an agent (not of his own selection, but one forced upon him against his will) whose insolvency or malfeasance would be chargeable to him.

The true rule is generally but tersely stated by Mr. Lewis in his work on Eminent Domain (section 842) to be that: "When the amount of the award has been deposited for the benefit of the owner pursuant to statute, it remains at the risk of the party making the deposit and not of the owner, and if lost through the insolvency or crime of the depository, it is the loss of the party condemning."

The reasoning of the Supreme Court of Colorado in Clelland v. McCumber, supra, seems unanswerable: "Without determining what interest, if any, the owner of the property sought to be taken or damaged has in the preliminary deposit before final judgment in condemnation proceedings, it seems clear that the petitioner making such deposit has an immediate and direct interest therein at all times until the final adjudication, and until the same is finally applied to its ultimate purposes. Such deposit is essential to petitioner's right of entry and possession. If by any means it is withdrawn before the final determination of the controversy, petitioner's right of possession is suspended. The preliminary deposit is not payment, nor part payment, until it is actually so applied. It is in the nature of a continuing tender, and must at all times be kept good by petitioner, though it lacks some of the incidents of tender, in that the owner is not bound to accept it or incur the risk of being mulcted in costs if it proves sufficient. In receiving the preliminary deposit, the court, or its proper officer, acts as the depositary of the petitioner, who thereby, in pursuance of the statute, acquires the privilege of immediate entry and possession of the premises sought to be taken. The owner is an involuntary party to the proceeding. If by any means the deposit fails, petitioner's statutory privilege is at once imperiled, and the possession may be actually terminated unless the deposit be replaced. The deposit, therefore, must be considered as held by the public official at the risk of petitioner, until the same is actually applied to its ultimate purpose, or is otherwise legally disposed of."

And the Supreme Court of Nebraska (Brown v. Ry., 64 Neb. 62, 89 N. W. 405, 406) presents the rule with equal force: "The constitution of this state provides (section 21, art. 1): 'The property of no person shall be taken or damaged for public use without just

compensation therefor.' The language of this section is imperative, and the right of the property owners to compensation is unqualified. This right cannot be impaired or modified by legislation or otherwise. He is not compensated until the sum to which he is entitled is paid or tendered to him or to some one authorized by him to receive it. It is not competent for either the legislature or the courts to appoint some person without his consent, and to say that payment of deposit with such appointee shall be equivalent to payment to him. If the statute expressly so provides, or was susceptible of that construction, it would be unconstitutional and void. In our opinion such is not its meaning, although it goes to the furthest limit permissible. The money, after the assessment has been made, is deposited with the county judge, not as payment, but as security that payment shall be made; and no act of the railway company, or of the court, or of any other person other than the property owner, can convert it into a payment, or relieve the corporation of its obligation, not to secure, but actually to make, just compensation for the property taken or damaged. The property owner may, if he chooses, waive his privilege, and apply for and receive the sum awarded and deposited, and by so doing he, of course, relieves both the company and the judge of all further or other responsibility; but he may also, if he prefers, stand upon his constitutional right, and demand that the sum awarded be paid to him, or to an agent of his own choosing. Neither during the pendency of the proceedings nor after they have ended can he be compelled to resort for the satisfaction of his demands to the uncertain security of official responsibility, nor to incur the risk of official delinquency. He cannot be charged with the negligence or shortcomings of an agent in whose appointment he did not concur, nor can he be accused of negligence because of failure to demand of a third person a sum of money which his adversary is under obligation to pay himself. The proceeding is instituted at the instance and for the benefit of the railway company, and the deposit is permitted to be made solely for its convenience. Having made it, the company obtains a license to enter upon the land, but does not accomplish the taking of the property, or acquire an easement therein, until it has satisfied the constitutional requirement, and made compensation therefor to the person owning the same. Commenting upon similar constitutional and statutory enactments, the supreme court of Iowa in White v. Railway Co., 64 Iowa, 281, 20 N. W. 436, say: 'These provisions are in harmony with the constitution. The payment of the money to the sheriff cannot be regarded as a payment to the landowner. Section 1244 provides that the amount of damages shall be paid to the sheriff "for the use" of the own-

er of the land. This evidently means nothing more than that it shall be paid by the sheriff, at the proper time, to the owner. The sheriff cannot be regarded as the agent of the owner, but rather as the agent of the railway company, which invoked his services by instituting the proceedings. The money cannot be regarded as having been paid into court, and therefore in the custody of the law. But, if this be not so, the payment to the sheriff is not payment to the landowner. If through the unfaithfulness or mistake of the sheriff, or the failure to pursue the directions of the statute, the money should be lost, and not reach the hands of the landowner, the loss ought not to fall upon him, but rather upon the railway company, which was the mover in the proceedings, and received the benefits flowing from them. Blackshire v. Railroad Co., 13 Kan. 514.'"

 Appellant complains of the action of the trial court in refusing to allow appellant to implead Burke, the county clerk, and the bank and state banking commissioner, in an amended pleading filed on the day of the trial of this cause. We are of the opinion the court did not abuse its discretion in this ruling. Appellee was entitled to proceed with his action without the delay to be caused by bringing in other parties whose causes could be litigated in a separate suit. Those causes are easily separable from that asserted by appellee, and it is perhaps true they would not have been improper parties, and could have been properly brought in by appellant at the time of its original answer. But the trial court was well within its discretion in denying appellant the privilege of afterwards impleading those parties, at a time which would entail long delay to appellee's suit.

■ Now, it appears from the record that the commissioners appointed in the condemnation proceedings assessed Astoria's damages at $7,500; that Astoria was dissatisfied with the award and appealed therefrom to the county court, as provided by statute; that in pursuance of the statute the city deposited said sum with the county clerk and thereupon took possession of the property condemned; that upon a trial in the county court it was agreed between the parties that the market value of the property condemned was $10,000, and an agreed judgment was thereupon, on December 20, 1932, entered in favor of Astoria for said sum, with interest, aggregating the total sum of $11,716.70. No appeal was taken from said judgment, which became a final judgment in the county court. It is significant that the judgment first entered in the county court included a recitation that the amount of the original award ($7,500, with interest) had been paid and should be credited upon the final judgment of $10,000 and interest, but afterwards, upon

motion of Astoria and the answer of the city thereto, said recitation was excluded, leaving the judgment absolute for $10,000 and interest. In the trial of this cause, for the writ of mandamus to require the city to pay said judgment in full, Astoria pleaded the final judgment of the county court as res adjudicata of the city's contention that it should be credited with the amount of $7,500 deposited with the county clerk. This court is unanimous in the holding that that plea of res adjudicata was good, and for that reason, if no other, the judgment must be affirmed.

FLY, Chief Justice.

I concur in the decision of this case in favor of appellee, on the ground of the matter therein discussed being res adjudicata as between the parties.