**WYNNEWOOD BANK AND TRUST, Appellant,**

v.

**The STATE of Texas, et al., Appellees.**

No. 05–87–01268–CV.

Court of Appeals of Texas,
Dallas.

March 8, 1989.
Rehearing Denied April 18, 1989.

**492**

John Brusniak, Jr., Todd Clement, Vial, Hamilton, Koch & Knox, Dallas, for appellant.

Shirley R. Thomas (State) Asst. Dist. Atty., Dallas, for the State.

Mike McKool, Dallas, for Raylo, Inc.

Before HOWELL, THOMAS and KINKEADE, JJ.

HOWELL, Justice.

In this condemnation case, appellant Wynnewood Bank and Trust (Bank) contends that the trial court erred in failing to make any provision for Bank in its final judgment. We affirm the judgment of the trial court.

The State of Texas and the County of Dallas (collectively "the State") brought this action to acquire fee simple title to the subject property, naming both the owner, Raylo Inc. (Owner), and the mortgagee, State Life Insurance Company [1], as defendants. Commissioners were appointed, and an award was made to Owner and Mortgagee jointly.

The State objected to the award and deposited the amount into the court's registry, subject to the order of Owner and State Life. A few days later, Owner obtained a court order stating that it was entitled to withdraw the award, and the entire amount was paid to Owner. While the case was awaiting trial, Bank filed a "plea in intervention" stating that it had taken an assignment of State Life's lien. Bank asserted that the lien had not been discharged and sought recovery against the State of the mortgage balance.

The condemnation case thereafter came to trial resulting in a verdict that fixed the value of the property well in excess of the mortgage balance but less than the commissioners' award. The trial court entered judgment awarding the State title to the condemned property together with judgment against Owner for a refund of the amount by which the deposit exceeded the jury's verdict. However, the judgment was silent concerning Mortgagee's claim

---

1. In this opinion the term "Mortgagee" refers interchangeably to State Life or its assignee, Wynnewood Bank and Trust. Wherever it is considered necessary to be more specific, such parties will be referred to as "State Life" and "Bank."

against the funds withdrawn by Owner, and Mortgagee appeals.[2]

In its single point of error, Mortgagee contends: "The trial court erred in failing to render judgment awarding the condemnation proceeds ... jointly to [Owner] and [Mortgagee]." Mortgagee argues that, as a holder of a lien on the condemned property, it was entitled to participate in the condemnation proceedings. Mortgagee asserts that it proved its lien on the condemned property as a matter of law and that, therefore, the trial court erred in failing to recognize its right to a share in the condemnation proceeds.

In response, the State contends that the trial court's judgment was correct because Mortgagee failed to establish the existence or amount of its lien claim as of the time of trial and because Mortgagee failed to obtain jury findings on these issues. We cannot accept the State's contentions.

■ The State's pleadings admit that State Life held a lien on the condemned premises at the time that the condemnation petition was filed. At trial, the parties stipulated into evidence the deed of trust creating the lien on the condemned property and two assignments which made Mortgagee Bank the owner of the lien and the note secured thereby. The deed of trust recited that the original principal amount of the secured debt was $110,000.00. The assignment to Bank recited an unpaid balance of $73,712.69. Thus, Bank presented submissible evidence of the existence and amount of its lien.[3] Lacking any controverting evidence, no jury issue existed as to the principal balance due on the date that Bank acquired the mortgage debt by assignment.

■ We hold that it was the burden of the State, if it desired to claim a reduction in such principal balance, to present evidence to such effect. A plea of payment is an affirmative pleading. TEX.R.CIV.P. 94, 95. The record contains no pleading and no evidence that the recited unpaid balance was reduced by subsequent payments. Thus, Mortgagee Bank's showing was sufficient to support recovery of the amount stated in the assignment.[4] *See Miller v. Bank of Commerce*, 387 S.W.2d 691, 692 (Tex.Civ.App.—Fort Worth 1965, no writ); *Twin City Bowling Lanes, Inc. v. C.I.T. Corp.*, 376 S.W.2d 94, 96 (Tex.Civ.App.—Fort Worth 1964, no writ).

■ We agree with Mortgagee's assertions that a lienholder is entitled to participate in the condemnation proceedings and that it may, under appropriate circumstances, recover a portion of the condemnation proceeds. *Buell Realty Note Collection Trust v. Central Oak Inv. Co.* 483 S.W.2d 24 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 486 S.W.2d 87 (Tex.1972). We also agree that, under the circumstances of this case, Mortgagee has sufficiently proven its lien interest. Nevertheless, other factors prevent Mortgagee from obtaining the relief which it seeks.

Mortgagee phrases its point of error and argument in terms of the trial court's failure to recognize its interest in the condemnation proceeds. Of course, at the time of judgment, the condemnation deposit was gone; nothing remained in the court registry. As we understand the brief and argument, Mortgagee desires an order that the State must pay, directly to Mortgagee, the amount of its lien balance before the State may have judgment for the property on an encumbrance-free basis. Such an order would effectively force the State to pay the amount of Mortgagee's lien twice. Such relief we are unwilling to provide.

There is little Texas authority concerning the rights of a mortgagee in condemnation proceedings. The early case of *Aggs v.*

---

2. State Life is not a party to this appeal. The State and Owner have participated as appellees.

3. No objection having been made, we need not consider whether Bank's evidence was inadmissible hearsay. Hearsay admitted without objection may have probative value. TEX.R.CIV. EVID. 802.

4. Inasmuch as neither the note nor any other instrument showing the interest rate was placed in evidence, there is nothing in the record which would support the recovery of interest due on the principal amount.

*Shackelford County*, 85 Tex. 145, 19 S.W. 1085, 1086–87 (1892), declared that "the mortgagee ... should be made a party," but went on to hold that the failure to implead the mortgagee did not invalidate the proceedings. *See also Nalle v. Eaves*, 5 S.W.2d 500, 501 (Tex.Comm'n App.1928, judgm't adopted) ("[T]he word 'Owners' ... embraces the holders of every kind of lien, claim, or equity in the property involved.").

The cases from other jurisdictions relating to the rights of mortgagees cannot be fully reconciled. There is general agreement that a mortgagee is entitled to notice of condemnation proceedings. There is, however, considerable diversity with respect to the recourse available to a mortgagee who does not receive notice. *See* Teague, *Condemnation of Mortgaged Property*, 44 TEX.L.REV. 1535, 1552–63 (1966).

The record in the case before us is far from satisfactory. Mortgagee has given notice of its intention to limit the appeal and has brought before us only a partial record. TEX.R.APP.P. 53(d). Such notice does not relieve an appellant of the obligation to bring forward a sufficient record to demonstrate reversible error. *See Rowlett v. Colortek, Inc.*, 741 S.W.2d 206, 207–.08 (Tex.App.–Dallas 1987, writ denied); TEX.R.APP.P. 50(d). We can go no further than to assume that the omitted record is not relevant. We cannot assume, on the basis of an exclusion of part of the record, that the appellant made the affirmative showing that is required of him. The record before us does not affirmatively demonstrate reversible error.

■ The original petition named State Life as a lien holder on the property. Bank entered the case by means of a "Plea in Intervention" filed five years later, in which Bank pleaded that it had purchased all of the outstanding indebtedness and had taken an assignment of State Life's lien. A motion for substitution of parties defendant would have been more appropriate. TEX.R.CIV.P. 37. We attach no significance to the method by which Bank entered the case except to hold that the rights of Bank are strictly derivative to the rights of State Life. In accordance with the law of assignments in general, we hold that Bank stands in the stead of State Life. All acts and omissions of State Life are chargeable to Bank. Defenses available against State Life are available against Bank. *See Vogt v. Jones*, 396 S.W.2d 539, 540 (Tex.Civ.App. —Fort Worth 1965, no writ). The petition for condemnation was filed in July 1980. According to unchallenged recitals in the final judgment, entered seven years later, commissioners were appointed, a hearing date was set, and notice thereof was caused "to be duly served as prescribed by law...." A commissioners' hearing was held. However, the judgment recites that Mortgagee filed no pleadings and made no appearance. Thereafter, the commissioners entered an award jointly in favor of Owner and Mortgagee. The State objected to the award and, according to the judgment, "caused the [d]efendants to be cited accordingly." The award was deposited in the court's registry in January 1981 "subject to the Order of Defendants [Owner and Mortgagee] jointly...." A few days later, the trial court entered an order which recited the commissioners' award in favor of Owner and Mortgagee jointly and its deposit into the registry. The order concluded, however, by ordering the clerk to pay over to Owner the full amount of the award.

In *Fort Worth Concrete Co. v. State*, 400 S.W.2d 314 (Tex.1966), the supreme court clearly indicated that, where a jointly payable condemnation award is deposited into the court's registry, the court may not simply order it paid to one condemnee without determining the other condemnee's interest in the award.

Once an award is made and the amount thereof is placed in the registry of the court *to the order of the condemnees*, and the land is occupied by the condemning authority, the interest of each condemnee is established in and attaches to that fund as security for any possible damage suffered by reason of his dispossession.... [T]he County Court had no authority to award any portion of the

deposit to [two of the condemnees] to the exclusion of [a third condemnee] until there had been a final determination of [the third condemnee's] compensable interest and damage, if any.

*Id.* at 317 (emphasis in original).

*Fort Worth Concrete* involved a situation in which the condemnor brought proceedings against the lessors and the lessee of the property. After a deposit of the commissioners' award for the benefit of all condemnees, the trial court granted, over objection, the condemnor's motion to dismiss the lessee from the suit; thereafter, it was not allowed to participate in the trial.

■ Although *Fort Worth Concrete* involved a leasehold rather than a mortgage, the basic principle prevails—a trial court may not order a joint award paid exclusively to one condemnee without determining the other condemnee's interest in the award. Therefore, we hold that the trial court's order directing the clerk to pay the condemnation proceeds to Owner alone was erroneous. The State had pleaded the existence of Mortgagee's lien; the commissioners had issued a *joint* award and the money had been paid into the registry of the court to the *joint* credit of Owner and Mortgagee. The fact that Mortgagee had filed no pleadings and had made no appearance, either before the commissioners or otherwise, did not justify the trial court's action in ignoring Mortgagee's interest as such interest was admitted to exist by the State's petition and was recognized by the commissioners' award.

Our holding does not mean that a mortgagee or some other beneficiary of a joint award may frustrate the withdrawal of the fund by failing to appear. The proper procedure for Owner, being obviously desirous of withdrawing the entire fund for itself, was to file a pleading setting forth its desire and the grounds upon which it considered that it was entitled to the entire fund. Any such pleading by Owner should necessarily have been served upon Mortgagee and a hearing held thereon. Should Mortgagee have defaulted the hearing, and if the procedures for proof upon default should have been followed, the fund could

have properly been withdrawn. Had Mortgagee appeared and presented disputed questions of fact, the court would have had no recourse except to order that the fund remain intact or that adequate security for the restitution thereof be given until the case had been tried upon its merits. *Fort Worth Concrete*, 400 S.W.2d at 314. Obviously, the court erred in failing to observe these fundamental procedural requirements.

■ However, our finding that the court erred in allowing the fund to be dispersed in January 1981 does not necessarily require a holding that would effectively require the State to pay for Mortgagee's interest twice before it could acquire fee simple title to the property condemned, and we decline to so hold in this case. To the extent that our holding conflicts with *City of San Antonio v. Astoria*, 67 S.W.2d 321 (Tex.Civ.App.—San Antonio 1933), *aff'd on other grounds*, 128 Tex. 284, 96 S.W.2d 783 (1936), we decline to follow that case.

In *Astoria*, the county clerk misappropriated a condemnation deposit that had been made for the benefit of the property owner. It was held that the constitutional requirement that no property shall be taken for public use until adequate compensation "shall be first made or secured by a deposit of money" burdened the condemnor to see to the application of any deposit. *Id.* at 322; *see* TEX. CONST. art. I, § 17.

[W]hen appellant deposited the award with the county clerk, the deposit was a continuing one, to be kept good by appellant against loss through the insolvency or defalcation of the depository.

*Astoria*, 67 S.W.2d at 322; *see also* TEX. CONST. art. 1, § 17. One member of the *Astoria* court apparently declined to subscribe to the *Astoria's* principal holding just quoted. *Id.; Astoria*, 67 S.W.2d at 324 (Fly, J., concurring). The Commission of Appeals, in an affirmance adopted by the supreme court, expressly declined to reach that holding. *City of San Antonio v. Astoria*, 128 Tex. 284, 96 S.W.2d 783, 784 (1936). We believe that equitable principles control the liability of the condemnor for any erroneous application of the con-

demnation deposit. We therefore reject the *Astoria* view which effectively makes the condemnor into a guarantor against loss by reason of misapplication of a condemnation fund.

In the case before us, the error complained of occurred eight years ago. The fund has long since gone out of the hands of the clerk. In order to effectively place double liability upon the State, it would be necessary for us to find that the State committed some wrong against Mortgagee's interest in the property. It is established that the State as condemnor paid the award into the registry of the court to the joint credit of the parties exactly in the same manner as it had been awarded by the commissioners. The condemnation statutes place no further burden on the condemnor. When the deposit was made, the lien of Mortgagee was effectively transferred from the property into the deposit. *Fort Worth Concrete*, 400 S.W.2d at 317. The State, as condemnor, was thereafter entitled to a writ of possession which excluded Mortgagee from the property just as effectively as it excluded Owner from the property. *See* TEX.PROP. CODE ANN. § 21.021(a)(1) (Vernon 1984).

Nevertheless, we hold that the State was not completely without responsibility from that point forward. Having made the deposit for the purpose of assuring the parties that they would be paid for their interest in the land, the State had a minimal duty not to stand idly by if placed upon notice that the funds were about to be misapplied or that misapplication had occurred. If the State knew that these proceeds on deposit to a joint credit were about to be withdrawn without notice to one of the joint credit parties, the State had the duty to object. If it learned, either before or after the withdrawal, of any such irregular disposition of the fund, it had the further duty to give notice to the affected party. If a condemnor is to enjoy the right to take the property and exclude the condemnees prior to a final adjudication of the rights of the condemnees, sound logic and fundamental fairness dictate that the condemnor cannot stand idly by if it knows that the fund is about to be or that it has been misapplied.

However, we decline to visit double liability upon the State under the facts of this case. The record fails to reflect any pleading or any evidence establishing notice or knowledge to the State with respect to the withdrawal of the fund. Without showing that the misapplication of the fund was somehow the fault of the State, Mortgagee's sole recourse must be against its own mortgagor.

We further think that the law of equitable restitution is applicable here. Mortgagee is, in effect, asking that funds that were equitably owned by it be restored to its credit. Such proceedings are governed by the rules of equity, which require that Bank show evidence that it exercised reasonable diligence on its own behalf. *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795–96 (1941), ("The maxim that 'Equity aids the diligent and not those who slumber on their rights' is a fundamental principle of equity jurisprudence....").

We are not inclined to fault Mortgagee for the fact that there was no appearance on behalf of Mortgagee before the time of the deposit. Such non-appearance was unrelated to the improper application of the deposit. Mortgagee was entitled to receive its full share of the award, subject only to the final judgment of the trial court, as soon as that award was made. The fact that the condemnor elected to take immediate possession and made a deposit into court did not reduce Mortgagee's rights. As we have already held, the trial court was not entitled to assume from Mortgagee's non-appearance that it had abandoned all right to the payment for its property. The law requires strict proof to show the relinquishment of a right by abandonment. *See Shosid v. Hughes Tool Co.*, 258 S.W.2d 945, 948 (Tex.Civ.App.—Dallas 1953, writ ref'd n.r.e.) ("[I]n abandonment intention is a necessary element and must be established by clear and satisfactory evidence."); *see also Raulston v. Everett*, 561 S.W.2d 635, 638 n. 4 (Tex.Civ. App.—Texarkana 1978, no writ) (title to

real property may not be lost by abandonment).

We do find substantial evidence that Mortgagee failed to exercise diligence in the protection of its rights after the fund was deposited. During June 1982, Mortgagee filed a motion asking the court to order Owner to pay over to State Life, out of the funds collected by Owner, the amount of the mortgage balance. An order setting such motion for a prompt hearing was endorsed on the motion. The transcript includes an extract from the clerk's fee book indicating that a defendant's exhibit was filed on such hearing date and a stenographer's fee was charged, indications that a hearing was indeed held. However, the record contains no order on such hearing and no statement of facts. Without further information concerning those proceedings, we cannot hold that Mortgagee has carried its burden of showing that it exercised reasonable diligence in its own behalf.

Mortgagee has made no showing as to when it or its predecessor first obtained notice or knowledge that the fund had been disbursed. The motion just discussed recited that Mortgagee had "only recently learned that [Owner] had received the funds and has made a request ... for the amount due" to Mortgagee. However, the instrument was only a pleading. It was not even verified. Further, there was no allegation that Owner had refused payment, although we possibly may assume as much.

Thereafter, on July 16, 1982, State Life filed a motion for correction of order asking the court to amend its order of January 30, 1981, to provide that the clerk pay the fund over to the defendants, Owner and Mortgagee, jointly. Bank's "plea in intervention," discussed below, recites that a so-called "Application for Writ of Mandamus," seeking a return of the fund to the court registry, was filed along with the motion for correction. No copy of the latter pleading is in the transcript. The "plea in intervention" states that a hearing was held on these pleadings during 1982. A copy of the court's docket sheet, appearing in the transcript, also reflects the filing of these pleadings.

The fee book extract indicates that during August 1982, another steno fee was charged and numerous exhibits were filed. However, there is again no order of the court nor any statement of facts included in the record. Without further showing, we are again unable to ascribe to Mortgagee any showing of diligence in the protection of its rights.

The transcript reflects no further Mortgagee activity until Bank's "plea in intervention," filed in April 1986, almost four years thereafter. That pleading contained no request for relief against Owner; instead, Mortgagee Bank asked that it "have judgment against [the State] for [the mortgage balance as alleged] together with interest thereon at the contractual rate...."

The record reflects no further action on Mortgagee's behalf to recoup the funds which were improperly paid out of the court registry. A trial occurred during July 1987. The only statement of facts from this trial covers certain pretrial proceedings in which the lien instruments relied upon by Mortgagee were stipulated into evidence. The only issue submitted to the jury inquired as to value of the premises. There is nothing in this record to show that Mortgagee offered evidence that it had exercised diligence in an effort to recoup the fund that was improperly paid out of the court registry. As already stated, the final judgment was in an amount of slightly less than the commissioner's award and the final judgment ordered Owner to repay the excess to the State. The judgment was silent concerning the rights of Mortgagee.

We hold that Mortgagee has failed to present evidence that it acted with diligence in the protection of its own rights. Under such circumstances, we decline to transfer Mortgagee's loss, if loss it be, to the condemnor, the State, through any type of judgment that would effectively require the State to pay more than the value fixed first by commissioners and later modified by the jury. Even though we have declined to hold the State to be entirely with-

out blame, we find that the balance of the equities are with the State; it may not be required to pay twice for Bank's interest in the same property.

Our decision that Mortgagee may not recover under the circumstances of this case is also supported by the equitable principles which underlie the doctrine of marshaling of assets. That doctrine requires a mortgagee to proceed against parcels of mortgaged property in that order which minimizes harm to subsequent grantees or lien holders. *See generally*, Comment, *Marshaling Assets in Texas*, 34 TEX.L.REV. 1054 (1956) (authored by John F. Green, Jr.). For instance, if the mortgagor has conveyed parcels out of the mortgaged property to other owners, those grantees may, under appropriate circumstances, require the mortgagee to look first to the property remaining in the hands of the mortgagor for satisfaction of its debt and to proceed against the property conveyed to the subsequent grantees only if the property in the mortgagor's hands is insufficient to satisfy the debt. *See Hawkins v. Potter*, 62 Tex.Civ.App. 126, 130 S.W. 643, 645 (1910, writ ref'd). This doctrine is based on the principle that the burden of discharging the mortgage debt should rest first on the mortgagor and his property. *Id.;* Comment, *supra* at 1058.

We conclude that this equitable principle is applicable under the facts of this case. The supreme court's decision in *Aggs v. Shackelford County*, discussed earlier in this opinion, supports this conclusion. In *Aggs*, the court indicated that a mortgagee omitted from condemnation proceedings had no recourse against the condemnor until it had instituted foreclosure proceedings against the mortgagor and had found the mortgaged property remaining after condemnation insufficient to satisfy the debt. *Aggs*, 19 S.W. at 1087. In our case, Mortgagee has not shown that it has attempted to collect from Owner and been unsuccessful.

We would enter a judgment against Owner for the funds which were improperly paid to Owner but for the following considerations. First, the "plea in intervention," which was Mortgagee's sole trial pleading, failed to ask for this relief. Further, we are not certain that this relief would be of any value to Mortgagee. After all, Mortgagee's entire case hinges upon the implicit claim that it continues to hold Owner's unsatisfied promissory note. Although the security instrument, the deed of trust, has failed, we are unaware why the note should not remain independently enforceable, at least to the same extent as any general judgment against Owner which this court could give. In short, Mortgagee has failed to show that it desires a judgment against Owner or that a judgment against owner would be of any assistance to Mortgagee. Therefore, we have decided to withhold judgment in favor of Mortgagee against Mortgagor.

In summary, we agree that the trial court erred and that the funds which constituted equitable security for Mortgagee's lien were misapplied. However, we fail to find evidence that would make the condemnor, the State, liable to make good upon that misapplication. We further find that the record fails to contain the affirmative showing of diligence necessary to invoke the equitable remedy of restitution and shift Mortgagee's loss to another party which did not directly procure that loss.

The trial court's judgment is AFFIRMED.