NUMBER 13-03-096-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

E.A.D.D., INC.,                                                                                 Appellant,

 

                                                             v.

 

NORTH
ALAMO WATER

SUPPLY
CORPORATION,                                                              Appellee.

 

                       On
appeal from the County Court at Law No. 2 

                                        of
Hidalgo County, Texas.

 

 

                               MEMORANDUM
OPINION

 

         Before
Chief Justice Valdez and Justices Hinojosa and Yañez 

                            Memorandum
Opinion by Justice Yañez

 

 








Appellant, E.A.D.D., Inc. (AEADD@),[1]
appeals from a judgment in an eminent domain proceeding.  In a single issue, EADD challenges the trial
court=s pre-trial ruling restricting the issue at trial
solely to the adequacy of the compensation for the property at issue.[2]  We affirm. 

                                                                  Background  

Appellee, North Alamo Water Supply Corporation (ANorth Alamo@), initiated eminent domain proceedings on an 8.59
acre tract owned by EADD.[3]  In its original petition seeking to acquire
the property by eminent domain, North Alamo named as defendants the property
owner, EADD, and the lienholder of the property, Alamo Bank of Texas (AAlamo Bank@).  Following
a hearing before the special commissioners on May 1, 1998, the commissioners
awarded $34,360.00 jointly to EADD and Alamo Bank; the funds were deposited in
the registry of the court.[4]  On May 20, 1998, EADD filed objections to the
award, challenging North Alamo=s condemnation authority and the amount of the
award.  EADD requested a jury trial.  








On July 23, 1998, counsel for Alamo Bank
hand-delivered a letter to the trial court requesting disbursement of the funds
held in the court=s registry to Alamo Bank.  The letter notes that by copy of the letter,
notice of Alamo Bank=s disbursement request was  provided to counsel for all parties.  On July 27, 1998, the trial court signed the
order and disbursed the funds to the bank.[5]

On April 7, 2000, North Alamo filed a Motion to
Limit and/or Restrict Issues, in which it argued that by failing to object to
Alamo Bank=s withdrawal of the funds, EADD waived any right to
challenge the taking of the property except for complaints regarding the amount
of the award.  Following a hearing on May
17, 2000, the trial court denied North Alamo=s
motion.[6]     








On May 23, 2002, North Alamo filed its First Amended
Original Petition and Original Answer to Objections to Award of Commissioners,
in which it asserted the affirmative defenses of estoppel and waiver that EADD
was barred from challenging North Alamo=s authority to condemn the property.  On June 25, 2002, the morning of trial, EADD
filed its Motion to Strike [North Alamo=s] Affirmative Defenses.  At the pretrial hearing immediately before
trial, EADD presented arguments in favor of its Motion to Strike.  North Alamo responded with arguments presented
in its May 23, 2002 answer and urged the trial court to reconsider its earlier
ruling denying North Alamo=s Motion to Restrict Issues.  After hearing the arguments of counsel, the
trial court ruled that because EADD had Ataken the money or the benefit of it,@ it was barred from challenging North Alamo=s authority to condemn at trial.  Thus, the trial court=s ruling granted North Alamo=s Motion to Restrict or Limit Issues and denied EADD=s Motion to Strike.[7]


The only issue before the jury was the adequacy of
the compensation paid for the property. 
The jury determined that the fair market value of the property was
$60,000.00  and awarded North Alamo
$20,000.00 in attorney=s fees.  On
September 12, 2002, the court signed a final judgment ordering that EADD
recover from North Alamo $25,640.00, the amount by which the jury=s verdict exceeded the amount of the commissioner=s award which was deposited in the court=s registry and withdrawn by Alamo Bank.








On October 10, 2002, North Alamo filed a motion for
new trial, arguing, among other things, that it was entitled to recover its
attorney=s fees pursuant to section 21.047 of the property
code.[8]  On October 28, 2002, the trial court signed a
second final judgment, awarding EADD the same amount of damages as awarded in
the September 12, 2002 judgment, but also awarding North Alamo attorney=s fees in the amounts awarded by the jury, which
were $20,000.00 for trial, $6,000.00 for an appeal to the court of appeals, and
$8,000.00 for an appeal to the supreme court. 
On November 27, 2002, EADD=s counsel filed a motion for new trial, contending
that he was not present at the October 28, 2002 hearing on North Alamo=s motion for new trial because he did not receive
notice of the hearing.[9]  EADD=s motion for new trial was not set for hearing and
was overruled by operation of law.[10]  This appeal ensued.

On August 30, 2005, this Court abated the appeal and
ordered the trial court to enter findings of fact and conclusions of law
regarding (1) the notice, if any, provided to EADD and North Alamo of Alamo
Bank=s motion to disburse funds prior to the disbursement
and (2) any determination of EADD=s interest in the award made by the trial court
prior to the disbursement.  On April 18,
2006, the trial court=s findings of fact and conclusions of law were filed
with this Court by means of a supplemental clerk=s
record.

                                                            Standard
of Review








We review the trial judge's exclusion of evidence
under an abuse of discretion standard.[11]  A trial court abuses its discretion when it
acts without regard for any guiding rules or principles.[12]  To obtain reversal of a judgment based on
error in the admission or exclusion of evidence, an appellant must show the
trial judge's ruling was in error and the error probably caused the rendition
of an improper judgment.[13]


 Findings of
fact and conclusions of law as a general rule are not available after a jury
trial.[14]  Here, however, the issue raised on appeal
results from findings made by the trial court independent of the jury=s verdict and is, as to the issue raised by the
appeal, a court-tried case.[15]  Findings of fact in a case tried to the court
have the same force and dignity as a jury's verdict upon questions.[16]  The trial court's findings of fact are
reviewable for legal and factual sufficiency of the evidence by the same well‑established
standards applied in reviewing the sufficiency of the evidence supporting a
jury's finding.[17]  Under a sufficiency analysis, we do not serve
as a fact finder, pass upon the credibility of witnesses, or substitute our
judgment for that of the trier of fact, even if there is conflicting evidence
upon which a different conclusion could be supported.[18]  Appellate courts review a trial court's
conclusions of law as a legal question.[19]

                                                                Applicable
Law








In Tigner v. City of Angleton, the Fourteenth
Court of Appeals explained the procedures applicable in condemnation
proceedings:

Generally, when a petition is filed in a
condemnation proceeding seeking condemnation of property through eminent
domain, the trial court appoints special commissioners who set a hearing on the
amount of the property owner's damages. 
Once the special commissioners file their award, the condemnor, if
satisfied, must either pay the amount of the award to the condemnee or deposit
that amount in the registry of the court. 
If the landowner is dissatisfied with the award, he or she must timely
file objections in the trial court.  Once
the objections are filed, the award of the special commissioners is vacated and
the administrative proceeding converts into a normal civil case before the
county court with the condemnor as plaintiff and the landowner as
defendant.  When a landowner properly
contests a condemnor's right to condemn by timely filing objections and
obtaining citation, the condemnor bears the burden of going forward with the
case and the consequences of abandoning the case.  

 

Thus, when objections are filed by the landowner,
and the landowner does not in any way consent to the taking of the property,
both the condemnation and the amount of compensation are issues to be resolved
by the trial court and the factfinder. 
However, if the landowner withdraws the award from the registry of the
court, the validity of the award ceases to be an issue.  By withdrawing the award from the registry of
the court, the landowner in effect, consents to the taking and the only issue
remaining is the appropriate amount of compensation. 

 

After an award has been made, and the money
deposited in the registry of the court and the landowner has withdrawn the
same, he cannot thereafter contend that the taking was unlawful.[20]

 

Section 21.021 of the property code provides, in relevant
part, that after the special commissioners have made an award, a condemnor may
take possession of the condemned property pending the results of further
litigation if the condemnor:

(1) pays to the property owner the amount of damages
and costs awarded by the special commissioners or deposits that amount of money
with the court subject to the order of the property owner.[21]













A party to a condemnation proceeding need not have
been the actual holder of the tract=s title to have a justiciable interest in the tract.[22]  It is sufficient that the party possessed a
lien in the property at the time of the taking.[23]  Once an award is made and the amount thereof
is placed in the registry of the court to the order of the condemnees, and the
land is occupied by the condemning authority, Athe
interest of each condemnee is established in and attaches to that fund as
security for any possible damage suffered by reason of his dispossession.@[24]  A lienholder
may be treated as a Aproperty owner@ so as to permit a single suit Abecause only when every interest of every character
in the land is acquired can the property be devoted fully and without restraint
or interference to the public purpose.@[25]  AWhere the whole of the mortgaged property is taken
in eminent domain proceedings, the mortgagee is entitled to all of the award or
so much of it as necessary to satisfy the mortgage indebtedness.@[26]  In such
circumstances, when condemnation proceeds are deposited, the interest of a
condemnee lienholder vests in the condemnation proceeds as compensation for the
destruction of the lien.[27]  Thus, a mortgagee who has a security interest
in property subject to condemnation is Aentitled to the first of any proceeds realized, to
the extent of the unpaid debt when the whole of the property is taken, or to
the extent of any impairment of his security interest when only a part of the
property is taken.@[28]

                                                                      Analysis

On January 26, 2006, North Alamo filed (in the trial
court) its Amended Motion to Enter Supplemental Findings of Fact and
Conclusions of Law.  Attached to the
motion are various documents, including (1) an affidavit by Terry Key, Alamo
Bank=s counsel at the time of the events surrounding the
disbursement, (2) a copy of a Apartial release of lien@ noting Alamo Bank=s
release of lien on the property in question, and (3) a copy of a letter dated
July 30, 1998, from Key to North Alamo=s counsel, noting Alamo Bank=s order for non-suit and noting its assumption that
by execution of the partial release of lien, it is no longer a party to the
condemnation proceedings (the letter notes copies were sent to EADD=s counsel). 
The trial court=s findings of fact and conclusions of law, signed by
the trial court on March 20, 2006, state:

Findings of Fact:

 

a.  EADD Inc.
F/k/a DEA Incorporated (AEADD@) had notice of Alamo Banks [sic] of Texas= Motion to Disburse Funds by July 22, 1998.  EADD had notice of Alamo Banks [sic] of Texas= tender to the Court of an Order to disburse the
funds by July 23, 1998.

 

b.  EADD,
despite such notice, did not contest or object to the motion or to the entry of
the Order.

 








c.  Alamo Bank of Texas was made a party to the
suit because Alamo Bank of Texas was the holder of a note dated January 18,
1991, in the original amount of $74,783.95 made by D.E.A. Incorporated to The
Border Bank (Athe Note@).

 

d.  The Note was secured by a lien on a part of
the Property that was the subject of the suit. 
Said Property and lien were described in a Deed of Trust dated January
18, 1991, executed by D.E.A. Incorporated, recorded in Volume 304d, Page 203 of
the Official Records of Hidalgo County Texas (Athe
Lien@).

 

e.  Alamo Bank of Texas succeeded to all rights
and interest that The Border Bank had in the Note and the Lien.

 

f.
 The disbursed funds were applied by
Alamo Bank of Texas to the Note for the benefit of the debtor D.E.A.
Incorporated.

 

g.  On February 12, 1999, Alamo Bank of Texas
executed a Partial Release of Lien dated February 8, 1999, releasing its Lien
against the property at issue in the suit.

 

h.  EADD, by and through its lender Alamo Bank of
Texas, withdrew the funds deposited in the registry of the Court pursuant to
Tex. Property Code ' 21.021.

 

Any
finding of fact that should be deemed a conclusion of law should be so deemed.

 

Conclusion
of Law:

 

a.  As a result of the withdrawal of the funds
from the registry of the Court, EADD is barred from contesting any aspect of
the taking except for the adequacy of the compensation for the Property.

 

Any
conclusion of law that should be deemed a finding of fact should be so deemed.

 

Terry Key=s
sworn affidavit states, in pertinent part:

 








6.  On July 22, 1998, the court held a hearing
wherein the parties discussed disbursing the funds in the registry of the court
to Alamo Bank to satisfy the Note and Lien obligations of D.E.A.
Incorporated.  There was no dispute
amongst the parties regarding the withdrawal of the funds by Alamo Bank.  On July 23, 1998, my office hand delivered to
the Honorable Homero Garza, the judge then presiding over the case, the attached
letter enclosing an AOrder Disbursing Funds Held in the Registry of the
Court@ (Athe Order@).  A copy of
the letter and the Order were sent via facsimile transmission to J.W. Dyer,
counsel for North Alamo Water Supply Corporation, and to Alex Moreno, counsel
for D.E.A. Incorporated to notify counsel of the request for the courts=[sic]
entry of the Order to disburse the funds to pay the note owed by D.E.A.
Incorporated to Alamo Bank of Texas. 
Prior to presenting the Order to the Judge, I had personally discussed
with Alex Moreno that Alamo Bank of Texas would be seeking a disbursement of
the funds to satisfy the debt his client D.E.A. Incorporated owed to Alamo Bank
of Texas.  At no time did Alex Moreno
state that his client was opposed to the disbursement or otherwise contest that
the monies were owed by his client to Alamo Bank of Texas.

 

7.  Without further hearing, the Court signed the
Order on July 27, 1998.  No opposition to
the Order was ever filed.

 

8.  The disbursed funds were applied by Alamo
Bank of Texas to the Note for the benefit of the debtor D.E.A. Incorporated.

 

9.  On February 12, 1999, Alamo Bank of Texas
executed the attached Partial Release of Lien dated February 8, 1999 releasing
its Lien against the property at issue in the suit.

 

10.  On July 30, 1998, I sent to the parties a
Motion and Order for Non-Suit in the case. 
The Order of Non-Suit was entered by the Court without objection.   

 

EADD has not filed any
response or objections to either Key=s affidavit or the trial court=s findings of fact and conclusions of law.    








Allegations contained in verified motions and
affidavits that are not controverted are accepted as true.[29]  Accordingly, we conclude that Key=s affidavit constitutes legally and factually
sufficient evidence to support the trial court=s
findings of fact.  We further conclude
that EADD (1) had notice of Alamo Bank=s motion to disburse funds by July 22, 1998 and
failed to object to the trial court=s disbursement on July 27, 1998, and (2) benefitted
from the disbursement because the disbursement satisfied EADD=s debt to Alamo Bank and released Alamo Bank=s lien on the property.  We hold that the trial court did not abuse
its discretion in restricting the issue at trial solely to the adequacy of the
compensation for the property at issue. 
We affirm the trial court=s judgment.     


 

                                                               
                                                       

LINDA REYNA YAÑEZ,

Justice

 

 

 

 

Memorandum
opinion delivered and filed 

this
the 8th day of June, 2006.

 











[1]
EADD was formerly known as
D.E.A., Incorporated.  D.E.A.
Incorporated was the owner of the property at the time eminent domain
proceedings were initiated.  For ease of
reference, we refer to appellant throughout this opinion as EADD.    





[2]
At a pretrial hearing, the
trial court considered and denied EADD=s Motion to Strike Affirmative Defenses of appellee, North
Alamo Water Supply Corporation. 
Similarly, it granted North Alamo=s Motion to Limit and/or Restrict Issues.  EADD=s Motion to Strike is not included in the record, but a
copy of the motion is attached to North Alamo=s brief.  However, our review is limited to the
appellate record.  See Till v. Thomas,
10 S.W.3d 730, 733 (Tex. App.BHouston [1st Dist.] 1999, no pet.).  Accordingly, we will review EADD=s issue as a challenge to the trial
court=s ruling granting North Alamo=s Motion to Limit and/or Restrict
Issues.  In its brief, EADD states the
issue as A[t]he trial court erred in denying
appellant the opportunity to present evidence that challenged appellee=s authority to condemn appellant=s land.@ 






[3]
See Tex. Water
Code Ann. ' 49.222 (Vernon 2000) (providing
generally that a water supply corporation may acquire property by condemnation
pursuant to the manner prescribed in chapter 21 of the property code).





[4]
See Tex. Prop.
Code Ann. ' 21.021 (Vernon 2004).  





[5]
Alamo Bank was the holder of
a note in the original amount of $74,783.95. 
The note was secured by a lien on a part of the EADD property at issue
in the condemnation proceeding.  





[6]
North Alamo=s Motion to Restrict Issues was
initially heard and denied by Judge Homero Garza, presiding judge of County
Court-at-Law No. 3, Hidalgo County, Texas. 





[7]
EADD argues that the trial
court=s ruling in favor of North Alamo=s estoppel position Ain effect constituted a summary
judgment on such issues without proper pleadings, without notice to Appellant
and without adequate grounds.@  We look to the
substance of a pleading to determine its nature, rather than its title.  See Tex.
R. Civ. P. 71; State Bar v. Heard, 603 S.W.2d 829, 833 (Tex.
1980).  Here, the granting of North Alamo=s Motion to Restrict had the effect
of prohibiting EADD from presenting certain evidence to the jury.  Accordingly, we view North Alamo=s motion as a motion to exclude
certain evidence, rather than a motion for summary judgment.  Moreover, we note that North Alamo asserted
its estoppel argument in its May 23, 2002 Answer to EADD=s objections, filed thirty-three
days before the trial court heard argument and issued its ruling on June 25,
2002.  Accordingly, we find EADD=s argument that the trial court
granted summary judgment without proper notice to be without merit.    





[8]
See Tex. Prop.
Code Ann. ' 21.047 (Vernon 2000).





[9]
North Alamo=s motion for new trial contains a
certificate of service stating that a copy of the motion was served on EADD=s counsel by mail.  Moreover, at the September 9, 2002 hearing to
enter judgment (attended by North Alamo=s and EADD=s counsel), the trial court ordered that the jury=s verdict stand Aalong with the attorneys= fees, too.@ 
The court was informed that neither counsel had prepared an order.  At the October 28, 2002 hearing (attended by
North Alamo=s counsel only), North Alamo=s counsel informed the court that
two Afinal judgment@ orders were submitted: one which
did not include attorney=s fees (submitted by EADD), and one
that awarded attorney=s fees (submitted by North
Alamo).   Counsel advised the court that
it had Ainadvertently signed the wrong
order@ and provided the court with a copy
of the proposed modified judgment.  The
court noted that it was granting North Alamo=s Amotion for modifying the judgment.@ 
The final judgment (including the award of attorney=s fees to North Alamo) was signed
by the trial court the same day, October 28, 2002.  We conclude that EADD had actual notice of
the trial court=s decision to enter judgment
awarding attorney=s fees to North Alamo.  In addition, although EADD=s brief notes that its motion for
new trial was based on the alleged lack of notice of the October 28, 2002
hearing, it does not contain any citations to authority regarding this
issue.  Accordingly, we conclude that any
issue regarding the alleged lack of notice is inadequately briefed and presents
nothing for review.  See Tex. R. App. P. 38.1(h).





[10]
See Tex. R.
Civ. P. 329b (e).  





[11]
See Owens‑Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998) (admission or exclusion of evidence is
a matter within trial judge's discretion).






[12]
Downer v. Aquamarine
Operators, Inc.,
701 S.W.2d 238, 241‑42 (Tex. 1985).





[13]
See Tex.
R. App. P. 44.1; Owens‑Corning Fiberglas Corp., 972 S.W.2d
at 43.  





[14]
Roberts v. Roberts, 999 S.W.2d 424, 433 (Tex. App.BEl Paso 1999, no pet.).  





[15]
See Rothwell v. Rothwell, 775 S.W.2d 888, 890 (Tex. App.BEl Paso 1989, no writ). 





[16]
Anderson v. City of Seven
Points, 806 S.W.2d
791, 794 (Tex. 1991). 





[17]
Id.





[18]
Golden Eagle Archery, Inc.
v. Jackson, 116
S.W.3d 757, 761 (Tex. 2003); Wal‑Mart Stores, Inc. v. Garcia, 30
S.W.3d 19, 21 (Tex. App.BSan Antonio 2000, no pet.). 





[19]
BMC Software Belgium, N.V.
v. Marchand, 83
S.W.3d 789, 794 (Tex. 2002).





[20]
Tigner v. City of Angleton, 949 S.W.2d 887, 890 (Tex. App.BHouston [14th Dist.] 1997, no writ)
(citations omitted).  





[21]
See Tex. Prop.
Code Ann. ' 21.021(a)(1) (Vernon 2004).





[22]
Olivares v. Birdie L. Nix
Trust, 126 S.W.3d
242, 250 (Tex. App.BSan Antonio 2003, pet. denied)
(citing Wynnewood Bank and Trust v. State, 767 S.W.2d 491, 493 (Tex.
App.BDallas 1989, no writ)).  





[23]
Id.  





[24]
Id. (citing Fort Worth Concrete Co.
v. State, 400 S.W.2d 314, 317 (Tex. 1966)).





[25]
State v. First Interstate
Bank of Tex., N.A.,
880 S.W.2d 427, 430 (Tex. App.BAustin 1994, writ denied) (quoting Houston N. Shore Ry.
v. Tyrrell, 98 S.W.2d 786, 793 (Tex. 1936)).   





[26]
Olivares, 126 S.W.3d at 250 (quoting Buell
Realty Note Collection Trust v. Cent. Oak Inv. Co., 483 S.W.2d 24, 27 (Tex.
Civ. App.BDallas 1972, writ ref=d n.r.e)). 





[27]
Id. 





[28]
First Interstate Bank, 880 S.W.2d at 431; see also
Wynnewood, 767 S.W.2d at 493 (a lienholder is entitled to participate in
condemnation proceedings and may, under appropriate circumstances, recover a
portion of condemnation proceeds).    





[29]
See Jack B. Anglin Co.,
Inc. v. Tipps, 842
S.W.2d 266, 270 (Tex. 1992) (court accepts as true the clear, direct, and
positive evidence of an undisputed affidavit); Whitehead v. Julian, 476
S.W.2d 844, 844-45 (Tex. 1972) (uncontroverted affidavit must be accepted as
true).