H.W. BEUTEL, et al., Appellants,

v.

DALLAS COUNTY FLOOD CONTROL DISTRICT, NO. 1, Appellee.

No. 10–94–070–CV.

Court of Appeals of Texas, Waco.

Feb. 14, 1996.

Rehearing Overruled March 13, 1996.

---

Alan B. Padfield, Law Offices of John R. Lively, Fort Worth, Andy McSwain, Fulbright, Winniford, Bice & Marable, Waco, for appellants.

James D. Blume, James D. Blume, P.C., Dallas, Joe Putnam, Irving, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

At issue in this condemnation case is a 13.8 acre tract of land in Irving that is presently situated in a flood plain. The appellants are the original defendant, B.K. Cross (B.K.), and an intervenor at the trial court, H.W. Beutel, Jr., M.D., and they, in separate briefs, complain the trial court erred in finding that neither one shares an interest in the award given by the Dallas County Flood Control District No. 1 (District) for its condemnation of the tract. The issues presented by appellants are: first, whether the trial

court erred in failing to stay the trial proceedings after a co-defendant (who is no longer a party to this lawsuit) filed a petition in bankruptcy; second, whether the trial court erred in denying Beutel's motion for a continuance, which he filed when the court denied the District's motion to strike his plea in intervention only three weeks before trial; third, whether the court erred in denying Beutel's motion for leave to file an untimely jury demand; fourth, whether the court erred in failing to find that another co-defendant, who is also no longer a party to this suit, had properly appealed the commissioner's condemnation award; fifth, whether the court erred in offsetting a judgment against a prior owner of the 13.8 acre tract against them; sixth, whether cumulative error resulted from a combination of erroneous trial court rulings; seventh, whether the trial court erred in determining the amount of compensation owed to the owner of the condemned tract; and eighth, whether they are entitled to prejudgment interest. The District has also raised a cross-point, asserting the trial court erred in denying its motion to strike Beutel's plea in intervention. We affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The 13.8 acre tract has been the subject of controversy since September 1983 when the District, which was created by the Texas Legislature to design and implement a plan for flood control and flood plain reclamation for the land comprising the flood plain, authorized $2500 per acre to purchase the tract from the General Portland Company in furtherance of its plan to reclaim portions of the flood plain.[1] The following month, B.K. purchased the 13.8 acre tract from General Portland for $10,000 per acre. B.K.'s son, Charles Cross (Charles), then purchased the tract on credit from B.K. for approximately

$2 million in October 1983.[2] The sale was secured by deed of trust liens on the property in this amount.

On April 7, 1984, Charles won election to the District's Board of Directors, and was thereafter chosen President of the Board by his fellow directors. On July 16, 1984, Charles, as owner of the 13.8 acre tract, obtained from the Board a reprieve from the District's condemnation proceedings. At or about this same time, Charles granted the District a temporary construction easement of 11.8927 acres on the tract so that reclamation construction could begin. The District immediately took possession of the tract and began construction. Apparently, in preparation for a new set of condemnation proceedings, the District agreed to prepare engineering drawings for the tract, showing a concrete-lined channel running through the tract.

In April 1985, the composition of the Board changed when two new members were added. Each of them had significant ties to Charles and stood to gain financially by assisting him in his efforts to have the District condemn the tract.

In the summer of 1985 the Board decided that it would prefer to purchase a permanent easement across Charles' 13.8 acre tract rather than use the temporary easement he had made available. By the end of August, the Board had decided to purchase a permanent 4.611 acre easement across the 13.8 acre tract. In exchange for the easement, the District agreed to pay Charles $239,580.84, or $51,958.54 per acre. The District also agreed to provide Charles a number of other benefits, which are listed in *Dallas County Flood Control Dist. No. 1 v. Cross*, 815 S.W.2d 271, 275 (Tex.App.—Dallas 1991, writ denied) (hereafter *Cross II* ).

---

1. This case has been the subject of three prior appellate court decisions. *Coit v. Dallas County Flood Control Dist. No. 1*, 900 S.W.2d 907, 908 (Tex.App.—Eastland 1995, no writ); *Dallas County Flood Control Dist. No. 1 v. Cross*, 815 S.W.2d 271 (Tex.App.—Dallas 1991, writ denied); *Cross v. Dallas County Flood Control Dist. No. 1*, 773 S.W.2d 49 (Tex.App.—Dallas 1989, no writ). We will borrow heavily from these opinions in our recitation of the facts.

2. By virtue of the requests for admission submitted to both Charles and B.K., which were later deemed admitted due to their failure to respond timely, Charles and B.K. both admitted that B.K. purchased the tract from General Portland for $138,370.

On October 7, 1985, the District decided to condemn the remaining portion, a total of 8.233 acres, of the original 13.8 acre tract.[3] On November 12, the Board set a price for the remaining 8.233 acres at $1,201,408.70. Of the five Board members, Charles abstained from the vote and a second member had previously passed away, but the remaining three members voted unanimously in favor of the purchase.

When the minutes from this November 12 meeting were posted, several taxpayers within the District became incensed, and in December they filed a lawsuit against Charles and the District. They sought to rescind the agreement concerning the purchase of the 8.233 acre tract and to block the sale of bonds necessary to fund its purchase. The Texas Attorney General's office refused to authorize the bond sale until the lawsuit reached some resolution.

In April 1986, before the lawsuit went to trial, the two members of the Board, who were up for election at the time, were defeated. A third new member was also elected at or about the same time to fill the position vacated by the deceased Board member mentioned above. These three new board members wished to proceed with the selling of bonds, not to pay Charles, but to fund the purchase of other tracts within the flood plain as part of the continuing reclamation project. The bonds could not be sold, however, because the Attorney General would not authorize the District to sell any bonds until the lawsuit with Charles had been sufficiently settled. Accordingly, the parties reached a temporary settlement agreement, which the Dallas Court of Appeals dubbed a "truce." *Cross II*, 815 S.W.2d at 276; *see Coit v. Dallas County Flood Control Dist. No. 1*, 900 S.W.2d 907, 908 (Tex.App.—Eastland 1995, no writ). Under the truce, the original plaintiffs dropped their original lawsuit against Charles, and Charles agreed not to challenge the District's authority to sell the bonds. The Board agreed to pay Charles, in addition to the $65,000 cash he received up front in November 1985 for the

purchase of the 8.233 acre tract, $200,000 in cash from the sale of the bonds. The Board also agreed to place $1,042,954.20 in escrow pending a final resolution of their dispute. The Attorney General subsequently approved the bond sale, and it took place in November 1986.

In March 1987 the District brought its lawsuit against Charles, alleging violations of the Deceptive Trade Practices Act and requesting a declaratory judgment that the August 1985 agreement between the District and Charles for the 4.611 acre easement and the November 1985 agreement for the 8.233 acre tract were illegal and, therefore, voidable. The jury found that amounts paid to Charles by the District were unconscionable, but also concluded that the District suffered no damages because the prices reflected the fair market value of land. *Cross II*, 815 S.W.2d at 277. The jury further found that the District was estopped to assert that its prior transactions with Charles were illegal. *Id.* Therefore, the District took nothing on its DTPA cause of action. With regard to the declaratory judgment action, the District was even less successful. The trial court, in construing the conflicting jury findings, concluded that Cross was owed $1,005,572.50 in damages for the 4.611 and the 8.233 acre tracts of land. *Id.*

On appeal, the Dallas Court of Appeals reversed and rendered judgment for the District, finding, based upon the answers of the jury, that the members of the Board who voted for the transaction had violated the applicable conflict of interest statute, that the Board's actions violated the Open Meetings Act, and that public policy barred the knowing beneficiaries of illegal transactions from asserting equitable estoppel. *Id.* at 285; *Coit*, 900 S.W.2d at 908.

By the time of the Dallas court's judgment, however, the District had already constructed its flood controls over the permanent easements on the lands in dispute and, because these easements were held to be void, the District sued in a new cause of action for condemnation of these easements. *Coit*, 900

---

3. What happened to the approximate one acre that is not accounted for is not relevant to our decision in this case.

S.W.2d at 908. The court assessed damages for the taking at $139,000, but found that Charles had previously been paid $578,228.74 for the property.[4] *Id.* at 908–09. The court, after applying the offset, entered judgment that Charles and his assignees take nothing. *Id.* at 909. This appeal concerns primarily the court's assessment of the damages at $139,000 and the applicability of the offset to the appealing parties.

B.K. and Beutel both claim to possess Charles' interest in the 13.8 acres. B.K. alleges that she obtained title to the tract by foreclosing on a deed of trust she possessed as security for Charles' purchase of the property from her on credit. Beutel contends he obtained title when he bought the tract at a sheriff's auction. Beutel had successfully sued Charles and his daughter for fraud and misrepresentation, obtaining a judgment on July 22, 1991, in excess of $1 million. An abstract of the judgment was filed on the tract the following month; a certified copy of it is included in the record. To satisfy the judgment, the sheriff sold the 13.8 acre tract to the highest bidder, who happened to be Beutel.

## II. THE DISTRICT'S MOTION TO STRIKE BEUTEL'S PLEA IN INTERVENTION

The District in its cross-point argues the trial court erred in not granting its motion to strike Beutel's plea in intervention. Beutel filed his Plea in Intervention on May 5, 1992. On May 26, 1992, the District filed its motion to strike the plea in intervention. The motion was denied on October 5, 1993, three weeks before the trial commenced.

 Generally, any party may intervene in a pending suit so long as he has a justiciable interest in the subject matter that makes it necessary or proper for him to come into the case for his self-protection. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Pennzoil Co.,* 866 S.W.2d 248, 250 (Tex.App.—Corpus Christi 1993, no writ); *DeCato v. Krebs Constr., Inc.,* 410 S.W.2d 806, 808 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.); 57 TEX.JUR.3D *Parties* § 72 (1987). The question before us, then, is

whether Beutel had a justiciable interest in the original lawsuit. We will examine the District's motion to strike Beutel's plea in intervention as we would a motion for summary judgment. *National Union,* 866 S.W.2d at 250.

 The only parties entitled to a condemnation award are the owners of the condemned property at the time of the taking. *City of Austin v. Capitol Livestock Auction Co., Inc.,* 453 S.W.2d 461, 463 (Tex.1970). Accordingly, if Beutel could have been considered an owner of the 13.8 acre tract at the time the District took the property, then he obviously possessed a justiciable interest in the lawsuit and properly was allowed to intervene. Beutel need not have been the actual holder of the tract's title at the time of the taking to have a justiciable interest in the tract. It would be sufficient if he merely possessed a lien interest in it. *Wynnewood Bank and Trust v. State,* 767 S.W.2d 491, 493 (Tex.App.—Dallas 1989) (citing *Buell Realty Note Collection Trust v. Central Oak Inv. Co.,* 483 S.W.2d 24 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam,* 486 S.W.2d 87 (Tex.1972)). To decide whether Beutel was an "owner" within the meaning of condemnation law, we must determine the correct date of the taking and whether Beutel possessed an interest in the tract on that date.

Beutel asserts that he obtained a lien interest in the 13.8 acre tract when he abstracted his judgment against Charles in August 1991. In filing this judgment, argues Beutel, he became a judgment creditor against Charles, which thereby secured to himself a justiciable interest in the tract because Charles was the owner at the time. We need not decide whether Beutel became an owner in the tract at the time he abstracted his judgment or the date upon which he purchased the tract at the sheriff's auction, however, because the taking took place well before both of these dates.

In its motion to strike the plea in intervention, the District stated that the taking occurred in July 1984. Beutel in his response did not contest the District's claim that the taking occurred in July 1984. Instead, he

---

4. A judgment against Charles to return this sum to the District is currently outstanding.

argued that the person entitled to the condemnation award was the owner on the date of the condemnation judgment, and, as he was at the time of these proceedings at least a lienholder in the tract and as the condemnation judgment was yet to be rendered, he necessarily had a justiciable interest in the property.

■■■ A taking occurs on the date which the condemnor lawfully takes either actual possession by physically entering the land or constructive possession by the deposit of the commissioner's award. *City of Fort Worth v. Corbin*, 504 S.W.2d 828, 830 (Tex.1974); *see Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60–61 (Tex.1991) (orig. proceeding). The District's brief in opposition to Beutel's plea in intervention indicates that the District assumed actual possession of the tract in July 1984 and began construction at that time. This allegation was not disputed by Beutel. The District may or may not have assumed a constructive possession of the tract on an earlier date, but it is sufficient for our purposes to find that the District took actual possession of it in July 1984.

■■■ As the date of possession was in July 1984, we find that the taking occurred at this same time. *Corbin*, 504 S.W.2d at 830. Moreover, because the taking took place before the earliest possible date upon which Beutel could have acquired his interest in the tract, we find that Beutel did not have an "ownership" interest in the tract at the time of the taking. *Capitol Livestock Auction*, 453 S.W.2d at 463. Therefore, Beutel did not have a justiciable interest in the tract at the time of the taking, and the trial court erred in failing to strike his plea for intervention. The District's cross-point is sustained. Beutel is not a proper party to this lawsuit, and we will, accordingly, not consider his arguments on appeal.

### III. THE BANKRUPTCY STAY

In B.K.'s seventh point of error, she argues the trial court erred in proceeding to trial after Charles filed a petition in bankruptcy on Friday, October 22, 1993, three days before the scheduled trial date. She asserts the automatic stay provisions of section 362 of the Bankruptcy Code required that the trial court halt all proceedings once Charles filed his petition. 11 U.S.C.A. § 362 (West 1993 & Supp.1995).

■■■ B.K., however, not being the party who filed for bankruptcy, did not have the benefit of the automatic stay afforded debtors who file bankruptcy petitions. *HBA East, Ltd. v. JEA Boxing Co., Inc.*, 796 S.W.2d 534, 536 (Tex.App.—Houston [1st Dist.] 1990, writ denied), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 998 (1991). Being joined as a co-defendant with Charles and anticipating to go to trial with him, she expected the trial court to stay the proceedings with respect to all three of the defending parties. B.K., however, was not legally entitled to this reliance. *Id.*

Ordinarily, the automatic stay under section 362 does not extend to actions against parties other than the debtor, such as co-debtors, guarantors, sureties, or other non-debtor parties. *Id.; Audio Data Corp. v. Monus*, 789 S.W.2d 281, 286 (Tex.App.—Dallas 1990, no writ); *In re Chugach Forest Products, Inc.*, 23 F.3d 241, 246 (9th Cir. 1994); *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir.1993); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir.1983). An exception to this general rule is sometimes utilized in situations where the assets of the bankruptcy estate would be jeopardized in allowing court proceedings to proceed against the co-defendant. *Dos Cabezas*, 995 F.2d at 1491; *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.*, 817 F.2d 1142, 1147–50 (5th Cir.1987); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re North Star Contracting Corp.*, 125 B.R. 368, 370–71 (S.D.N.Y.1991); *Trimec, Inc. v. Zale Corp.*, 150 B.R. 685, 687 (N.D.Ill.1993). To be entitled to this exception, however, the co-defendant must demonstrate either that (1) there is such identity between the debtor and the co-defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor or that (2) extending the stay against the codefendant contributes to the debtor's

efforts of rehabilitation. *Dos Cabezas,* 995 F.2d at 1491 n. 3. B.K. offered no evidence to establish either of these two conditions. Therefore, B.K. is not entitled to the exception. *Id.* Her seventh point is overruled.

## IV. THE MOTION FOR CONTINUANCE

B.K. argues in her first point of error that the trial court abused its discretion in denying her motion for a continuance. She asserts the trial court was obligated to grant her motion for two reasons; first, she was unable to conduct discovery with Beutel because the District's motion to strike his plea in intervention was denied only three weeks before trial, and second, another lienholder on the 13.8 acre tract, Henry Coit, had not yet been joined as a party to the lawsuit even though he was a necessary party.

■■■ The granting or denying of a motion for continuance is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *State v. Wood Oil Dist., Inc.,* 751 S.W.2d 863, 865 (Tex.1988).

For B.K. to argue successfully that her motion for continuance was improperly denied, she must be able to demonstrate that she suffered harm from the trial court's action. TEX.R.APP.P. 81(b)(1). As was decided in the District's cross-point, Beutel is not a proper party to this lawsuit. Accordingly, unless B.K. is able to show that she needed to conduct discovery of Beutel with regard to her lawsuit with the District, she could not have been harmed by the court's failure to grant the continuance. B.K. does not argue that she needed to conduct discovery of Beutel with regard to her lawsuit against the District. Therefore, B.K. is unable to demonstrate that she suffered any harm under her first argument.

■■■ Concerning her second argument regarding Henry Coit, the record reveals that a hearing on B.K.'s motion for continuance was held on October 19, 1993. At the hearing, B.K.'s counsel at the time, William M. Jones, requested a continuance so that the parties could ascertain whether Coit should be joined as a party to the lawsuit. Jones noted to the court that Coit had a deed of trust lien on the tract filed in Dallas County and that Coit had not attempted to intervene. The court then denied the motion, finding, among other things, that the issue was not raised at the comprehensive pretrial hearing held on April 23. We cannot find that the trial court committed a clear abuse of discretion in refusing to grant the motion when it found that the issue could have been brought before the court several months earlier, rather than one week before trial. *See Wood Oil,* 751 S.W.2d at 865. Neither of B.K.'s arguments in her first point of error has merit; therefore, the point is overruled.

## V. THE MOTION FOR LEAVE TO FILE AN UNTIMELY JURY DEMAND

■■■ In her second point of error B.K. contends that the trial court erred in denying Beutel's motion for leave to file an untimely jury demand. B.K., however, has no standing to complain about Beutel's failure to file a jury demand and pay the jury fee. *See* TEX.R.CIV.P. 216. If B.K. had wanted a jury trial, she could have requested one. B.K.'s second point is overruled.

## VI. THE CO-DEFENDANT'S APPEAL OF THE COMMISSIONER'S AWARD

■■■ B.K. in her tenth point of error argues the trial court erred in finding that Barbara Cross, Charles' wife, failed to appeal the commissioner's award. Having disclaimed her interest in the lawsuit on November 16, 1993, Barbara Cross is simply not a party to this appeal. B.K. has no standing to make this argument on behalf of Barbara Cross. B.K.'s tenth point is overruled.

## VII. THE OFFSET

■■■ In her third, fourth, fifth, and sixth points of error, B.K. argues the trial court erred in offsetting against her the $578,-228.74 the court determined had previously been paid to Charles. *See Coit,* 900 S.W.2d at 908. "There is no doubt of the power of courts independent of statute to set off mutual judgments against each other. Such power has long been exercised by both courts of law and equity." *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 468 (Tex.1995) (quoting *Simpson v. Huston,* 14 Tex. 476, 481

(Tex.1855)). Nevertheless, she contends the setoff ordered by the trial court is improper as applied to her. She asserts that at the time of the taking she held approximately $2,000,000 in liens on the 13.8 acre tract and, therefore, because Charles defaulted on the money he owed her, she is entitled to a portion of the condemnation proceeds. She disagrees with the conclusion of the trial court that she was either an assignee or successor-in-interest of Charles and that the District, as a result, could offset the $578,-228.74 against the condemnation award.

■■■■■ B.K., however, judicially admitted, by failing to timely respond to the District's requests for admissions, that the sale of the tract between her and Charles was a sham. TEX.R.CIV.P. 169. Unanswered requests for admission are deemed admitted, unless the court on motion permits their withdrawal or amendment. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989). An admission, once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. *Id.* Accordingly, when findings by the trier of fact contradict properly admitted judicial admissions, the judicial admissions must be accepted as superior. *See id.* at 699–700.

■■■■■ The sham transaction between Charles and B.K. rendered their interests in the 13.8 acres the same. *See Rosenthal v. Leaseway of Texas, Inc.,* 544 S.W.2d 180, 182 (Tex.Civ.App.—Tyler 1976, no writ) (quoting *Sargent v. Highlite Broadcasting Co.,* 466 S.W.2d 866, 868 (Tex.Civ.App.—Austin 1971, no writ)) (a person who operates a corporation as a sham is considered its alter ego). Therefore, because the interests of Charles and B.K. were identical, the court did not err in offsetting against B.K. the prior $578,-228.74 judgment against Charles. Points three through six are overruled.

■■■■■ Nevertheless, at the time of the taking B.K. possessed an ownership interest in the tract, whether she is viewed as a lien-holder or as a co-owner with Charles. *See Aggs v. Shackelford County,* 85 Tex. 145, 19 S.W. 1085, 1086–87 (1892); *Wynnewood,* 767 S.W.2d at 493. Therefore, she is a proper party to the suit and we will consider her remaining points on appeal.

## VIII. THE VALUATION OF THE TRACT

■■■■■ In her eighth and ninth points of error B.K. argues the trial court erred in failing to admit into evidence for the purpose of issue preclusion a prior determination by a jury in a different case of the value of the tract at the time of the taking. B.K., however, failed to preserve this complaint for our review. TEX.R.APP.P. 52(a).

The record reveals that Beutel proffered the prior judgment, but that the trial court refused to enter it into evidence. B.K. made no effort to offer the judgment, herself. In addition, when the trial court ruled that it would not admit the judgment into evidence, B.K. voiced no objection. In trials involving multiple defendants, each party must satisfy its own objection to the evidence if it wishes to preserve error for appeal. *Celotex Corp. v. Tate,* 797 S.W.2d 197, 201 (Tex.App.—Corpus Christi 1990, no writ); *Wolfe v. East Texas Seed Co.,* 583 S.W.2d 481, 482 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ dism'd); *see also Howard v. Phillips,* 728 S.W.2d 448, 451 (Tex.App.—Fort Worth 1987, no writ) (applying same principle to a defendant who failed to join his co-defendants in an offer of proof). B.K.'s eighth and ninth points are overruled.

Points twelve through fourteen deal with the court's finding that the value of the tract at the time of the taking was $139,000. In her twelfth point B.K. asserts the trial court erred as a matter of law in concluding that the value of the tract at the time of the taking was $139,000. In her thirteenth point she argues that there is no evidence and, in the alternative, factually insufficient evidence to support the court's finding. And in her fourteenth point she contends the court's finding is against the great weight and preponderance of the evidence. The fourteenth point is duplicative of the factual sufficiency portion of her thirteenth point; therefore, we will not consider it and it is, consequently, overruled. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633 (Tex.1986) (on rehearing).

When both legal and factual sufficiency challenges are raised on appeal, the court must first examine the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing a challenge to the legal sufficiency of the evidence, the court is to consider only the evidence and inferences tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987). In reviewing the factual sufficiency of the evidence, the court must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Examining B.K.'s legal sufficiency point first, we conclude that there is more than a scintilla of evidence to support the trial court's finding on the value of the tract. Thomas Hanes, a real estate appraiser whom B.K. stipulated at trial was an expert witness, testified that the value of the tract was $139,000, or $10,000 per acre.[5] He came to this conclusion after considering several factors. He considered that at the time of the taking the tract was zoned for light industrial purposes; that sewers were not readily available at the time of the taking; that a metering station would probably be required to connect the tract to a nearby sewage line; that city water lines would have to be extended to the property; and that electrical lines would easily be connected to the tract. Hanes also testified that only a small portion of the tract could ever be developed because the majority of the tract was so situated in the flood plain and flood way that it could not be reclaimed. More specifically, he testified that the vast majority of the tract was in the flood way, not the flood plain.[6]

In evaluating the value of the land, Hanes used the sales comparison system, also known as the market data approach. Hanes stated that the value of the land when it was sold from General Portland to B.K. in October 1983 was $138,370, the amount of money B.K. paid General Portland at the time for the tract. He also compared the tract to three other comparable tracts in the same vicinity:

1. A 101.73 acre tract approximately three miles south of the 13.8 acre tract sold in July 1983 for $1.5 million, or $14,-745 per acre. Approximately two-thirds of that tract was situated in a flood plain and flood way. The 101.73 acre tract was zoned for single family usage at the time of the sale.

2. A 62.4469 acre tract that was zoned for light industrial use sold in December 1984 in Grand Prairie, a city adjacent to Irving, for $532,000, or $8,519 per acre. This tract was completely located inside the floodway of the Trinity River.

3. A nearby 17.62 acre tract zoned for residential and agricultural use sold in February 1984 for $176,530, or $10,108 per acre. About ten of the 17.62 acres were located in the same flood plain as the 13.8 acre tract.

Hanes' testimony constitutes more than a scintilla of evidence to support the trial court's finding; therefore, B.K.'s legal sufficiency point is overruled. *Stafford,* 726 S.W.2d at 16 (if there is more than a scintilla of evidence to support the trier of fact's finding, a no evidence point will fail).

Considering B.K.'s factual sufficiency arguments on the valuation of the tract, we have weighed the evidence and determined that the trial court's finding was not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 794 (Tex.1994) (court of appeals is not required to give details supporting evidence when affirming factual sufficiency of the evidence underlying trial court judgment). B.K.'s twelfth and thirteenth points are overruled.

---

5. Hanes assessed the value of the land in fee simple. The District, however, took only a permanent easement across the tract. Hanes testified that the easement would at the most be worth $122,500.

6. According to Hanes' testimony, the difference between a flood plain and a flood way is that land in a flood plain can be developed if it is somehow raised whereas land in a flood way cannot be developed.

## IX. PREJUDGMENT INTEREST

In her eleventh point of error B.K. argues the trial court erred in failing to award prejudgment interest on the condemnation award. Prejudgment interest is additional damages for the loss of the use of money due as damages during the period between the accrual of the claim and the date of judgment. *LaCoure v. LaCoure,* 820 S.W.2d 228, 237 (Tex.App.—El Paso 1991, writ denied). Interest on a condemnation award stops accruing, however, once the award is paid to the condemnee. *Haley v. State,* 406 S.W.2d 477, 483 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.).

The trial court found that the District had previously paid Charles $578,228.74 for the tract. We held, above, that the interests of Charles and B.K. in the condemnation award are identical. Therefore, prejudgment interest on the tract ceased to accrue once it was paid to Charles.

There does appear, however, to be a gap in time when the District failed to compensate Charles and B.K. for its use of the land. The taking occurred in July 1984 while the District did not pay Charles for permanent easements across the tract until 1985. Nevertheless, we can only assume, and B.K. makes no argument to the contrary, that when the District paid Charles for those permanent easements as part of the truce agreement it intended to compensate him for its use of the land from the moment when it first took actual possession until it paid him for the easements in 1985. Accordingly, Charles and B.K. were never deprived by the District of any compensation for the land while it occupied the tract during Charles' ownership. B.K.'s eleventh point of error is overruled.

### X. CUMULATIVE ERROR AND THE REMAINING POINTS OF ERROR

In her fifteenth point of error, B.K. alleges that "[t]he judgment should be reversed because evidentiary and other rulings of the trial court amounted to cumulative error which led to an improper consideration of the trial court as to its findings herein, and this cause should be reversed and remanded in the interest of justice." B.K. does not specify, however, which rulings of the trial court were detrimental and how the cumulative effect of these rulings harmed her. Without knowing which rulings B.K. is disputing, we cannot address this point of error. TEX.R.APP.P. 74(f). Therefore, we overrule her fifteenth point of error. The judgment is affirmed.