# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00749-CV

**State of Texas, Appellant**

**v.**

**Capitol Feed and Milling Company, Inc., dba Callahan's
General Store of Austin, Appellee**

**FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
NO. 2404, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After a jury trial, the trial court awarded appellee Capitol Feed and Milling Company,
Inc., doing business as Callahan's General Store of Austin, $2,573,000 in compensation for the State
of Texas's condemnation of 0.147 acres of appellee's land. The State appeals, arguing that the trial
court erred by denying the State's motion for continuance and by excluding some expert testimony.
We will affirm the judgment.

## BACKGROUND

Appellee has operated a general store for thirty-seven years on an irregularly shaped
6.674-acre (287,670 square feet) tract of land in southeast Austin. The tract is south of the Colorado
River on the east side of United States Highway 183. Buildings on the property include a retail store,
an office, a metal warehouse, a two-story tilt-wall warehouse, and an open-front wood pole shed.

There is a parking lot for more than eighty vehicles, and there is a loading and trucking zone. Appellee uses these buildings for the unique blend of services it supplies. It operates a general store in which it sells clothing and a variety of other items. It also sells farm and ranch supplies stored in the warehouse.

The State filed a petition for condemnation on October 29, 2001 to expand the right-of-way along US 183. The State sought to acquire a 309-foot long strip of the parking lot totaling 0.147 acres (6410 square feet); the land taken would erase at most about twenty parking spaces and, depending on reconfigurations due to changes in driveway placement, could also affect traffic flow within the parking lot and prevent trucks from turning around in the lot unless there were modifications to the structures. The special commissioners appointed by the trial court heard the petition on February 13, 2002 and concluded that the State owed appellee $2.25 million. The State objected to the award and on March 1, 2002 demanded a jury trial. On May 22, 2002, the State deposited the amount awarded by the commissioners, entitling it to possession of the property. *See* Tex. Prop. Code Ann. § 21.021 (West 1984). After stipulating to the State's right to take the property, appellee withdrew the funds. May 22, 2002 is undisputedly the date used to evaluate the value of the taken property.

The State did not want a trial before October 2002. Appellee initially proposed July 8 or August 12, 2002. The State rejected both of these dates because its lead counsel[1] had trials set

---

[1] Kristina Silcocks was the counsel who signed and argued the motion for continuance. The original petition for condemnation and objections to the commissioners' award, however, were signed by John L. Ritts (whom she also asserted was unavailable). Although the clerk's record does not contain a designation of lead counsel, it does contain a copy of a letter to appellee's counsel attached to the State's motion for continuance that mentions that the designation of Silcocks as lead

2

in other cases on those dates and because the settings would abbreviate the discovery period. Nevertheless, on March 25, 2002, appellee set the case for trial on August 12, 2002. On July 11, 2002, the State moved for continuance. The State complained that appellee's counsel had not made a good faith effort to schedule the trial by agreement, that the State's lead counsel had the additional conflict of her sister's wedding in London, and that its expert witnesses had not had time to analyze the issues fully; apparently, the State also was hoping to hire a new expert regarding value. The court heard the arguments and denied the motion for continuance on July 15, 2002.

The parties proceeded to trial, with the State represented both by John L. Ritts, who had signed the original petition and the objections to the commissioners' award, and by a second assistant attorney general, John Toland. Appellee began the trial by questioning William T. Carson, the State's expert witness on land use, about the effect of the condemnation on the uses of the property. The State then sought to question Carson about modifications an owner could make to preserve the viability of the business if the City of Austin waived its regulations, but the court sustained appellee's objection based on the expert's failure to disclose this opinion to appellee. At the end of the first day of testimony, the State made a bill of exceptions containing Carson's excluded testimony.

After hearing testimony from Carson and other witnesses, including the State's original expert on valuation, the jury placed a value of $2,573,000 on the land taken.

---

counsel was filed.

DISCUSSION

The State appeals, complaining of the denial of the motion for continuance and the exclusion of rebuttal testimony.

## Denial of continuance

The State contended at trial that it needed a continuance because its expert witnesses had not had time to prepare reports, its counsel had scheduling conflicts, and the cause had not been mediated. The State indicates it was considering using a different valuation expert than the one who apparently did not fare well before the commissioners, and posits that appellee opposed the continuance in order to deny the State its choice of expert witnesses.

The State correctly notes that we may reverse the denial of a motion for continuance only for a clear abuse of discretion. *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). Appellants must also show that they were harmed by the denial of their motion. Tex. R. App. P. 44.1; *Beutel v. Dallas County Flood Control Dist., No. 1*, 916 S.W.2d 685, 693 (Tex. App.—Waco 1996, writ denied).

Contrary to appellee's argument, the State did not waive its right to complain of the denial of the continuance by announcing ready for trial after the motion was denied. The preservation of error rule is intended to ensure that the parties give the trial court the opportunity to address the contested issue and that the trial court reject the complaint. *See* Tex. R. App. P. 33.1. Parties thus can waive their right to complain of the denial of a continuance by announcing ready for

trial before making a motion for continuance or before receiving a ruling on their motion. *See Reyna v. Reyna*, 738 S.W.2d 772, 775 (Tex. App.—Austin 1987, no writ); *see also Rangel v. State Bar*, 898 S.W.2d 1, 2 (Tex. App.—San Antonio 1995, no writ). In this case, however, the court denied the State's motion before the State announced ready for trial. The State thus preserved the right to complain on appeal, and did not waive that right by subsequently announcing ready for trial.

The State's motion for continuance raised the required elements. A motion for continuance seeking time for discovery must be supported by an affidavit that describes the evidence sought, explains its materiality, and shows that the party requesting the continuance has used due diligence to obtain the evidence. Tex. R. Civ. P. 251, 252; *see Rocha v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.). Conclusory allegations in the affidavit about diligence are not sufficient. *See Gregg v. Cecil*, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ). The condemnation petition had been pending for about nine months, and the objections about four months, when the State sought the continuance; the trial was set for five months after the objections were filed. The materiality of the opinions of experts regarding valuation is implicit and unchallenged. The State alleged in its verified motion for continuance that it was diligently seeking to finish the necessary discovery, but that its experts had not had time to fully analyze and report their opinion on adequate compensation for the partial taking on May 22, 2002—the date the State took the property.

The court balanced the State's concerns with appellee's assertion that it wanted resolution of the issue so that it could plan its course of business. There was evidence that the condemnation would significantly affect appellee's business, prompting responses ranging from

5

restructuring of the physical plant, a move, or closure of the business. Appellee's attorney stated at the hearing that the State told the owners as early as December 1995 that the condemnation could close the business and that the State first threatened suit in July 2000. Appellee's attorney characterized this drawn-out process as a burden on the proprietors.

The State did not identify the witnesses excluded or explain why they could not prepare an opinion between May and July or August, but could by October or November. Indeed, when the trial occurred in August, the State presented the expert who had testified before the commissioners. The State has not shown what evidence, if any, the denial of the continuance prevented the State from presenting, much less whether that evidence was material and helpful to its cause.

The State's arguments concerning its counsel also fail. The State averred that Kristina Silcocks, who began representing the State in March 2002 after Ritts filed the objections to the commissioners' award, had conflicting trial settings and a personal conflict. Silcocks asserted at the hearing that Ritts had conflicting settings the week of August 12, although she was unsure whether the conflicting event was a trial, hearing, meeting, or something else. Ritts nevertheless appeared at trial along with another assistant attorney general.

The State's remaining arguments also fail. The fact that the case was never mediated might be grounds for granting a continuance, but it does not show that the trial court abused its discretion by denying the motion. Even if the State is correct in its assertion that appellee's opposition to the continuance may have been an attempt to restrict the State's choice of experts, there is no evidence that the denial of the continuance caused that result; other factors may have

contributed to that result as well. Appellee offered only the plausible explanation that it wanted the dispute resolved sooner rather than later.

We find that the trial court's denial of the motion was neither arbitrary nor unreasonable. We find further that the State has not shown harm from the denial of the continuance.

**Exclusion of evidence**

The State next argues that the trial court abused its discretion by refusing to admit expert testimony regarding possible alternatives to reconfiguring appellee's property in order to avoid or mitigate damages to the remainder from alleged traffic circulation and parking problems created by the taking. We review the exclusion of evidence for an abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).

Carson, the witness whose testimony is at the center of this dispute, is a land planner and developer designated as an expert by the State and called by appellee as an adverse witness at trial. In requests for disclosure regarding Carson's opinion, the State directed appellee to read Carson's report and his testimony at the hearing before the commissioners.[2] At the hearing, when asked "if you redevelop this site in any way, you would have to go to the City of Austin for approvals. Isn't that correct?" Carson responded, "That is correct." When asked at the hearing if a redeveloper would have to follow city codes for driveway spacing, Carson responded, "If you did anything other than put a retail and warehouse user back on the property, you would have to do that."

---

[2] These documents were apparently available at trial, but not admitted into evidence. They are not part of the appellate record except as the participants in the trial refer to them in the reporter's record.

7

At trial, after Carson announced that he had developed some new, undisclosed opinions since the hearing, there was a brief discussion off the record that concluded with the court sustaining an objection not contained in the record; immediately thereafter, however, Carson said he would attempt to limit his testimony to his previously disclosed opinions. Carson agreed that the current blend of uses was something the site could not accommodate after the taking, absent redevelopment. He also opined that there were few, if any, other single users who could use the property as currently developed,[3] but that change in use of the property could trigger application of City of Austin codes that were not yet being applied to the property. He explained that appellee's property was a legal nonconforming use—that is, it did not meet city codes, but was not required to do so while its current use continued. Appellee asked, "What would happen that would trigger the requirement that the landowner comply with City codes?" Carson then testified about various modifications (such as changing the use of the property, adding more than 1000 square feet to a building, leveling the warehouse floor) that would trigger imposition of at least some city codes that were not being imposed on the property; Carson conceded that bringing the property into compliance with city codes would be very expensive.

During the State's cross-examination of Carson, appellee objected when the State attempted to question Carson about modifications that would permit the current use to continue but would not trigger the imposition of city codes. The specific question that was stopped by appellee's objection was, "Now, could you, for example, tear down this office space and—." Outside the

[3] He speculated that a carpet wholesaler might be able to use the retail space for display and the large warehouse for inventory. Other warehouse users such as roofing materials suppliers would not need the retail space, and most retailers would not need the substantial warehouse space.

presence of the jury, Carson testified that only hours before, he had determined that the property could maintain its current functions if the office section of the complex were demolished and its functions moved into the warehouse or in a newly constructed building adjacent to the shed. He estimated the cost of the reconfiguration at between $600,000 and $700,000. He conceded that, in order to make such alterations to the property to preserve the pre-condemnation uses, the owner would need to obtain a waiver from the City of Austin to avoid imposition of city codes; he acknowledged that the City had been inconsistent about granting such waivers. Carson admitted that the preservation of the use of the property by relocation of the office marked a change from his previously disclosed opinions regarding the property and that he had not disclosed this change to appellee.

The parties made several arguments about the admissibility of this evidence. Appellee contended that Carson should not be permitted to testify regarding opinions he did not provide to appellee during discovery. The State responded that it was offering the evidence to rebut Carson's testimony on direct examination regarding actions that would trigger the imposition of city codes, and to explain that, even if the codes were triggered, the City could nevertheless waive imposition of its codes; the State argued that, because appellee initially adduced the testimony on the subject of the interaction of the modifications and the imposition of city codes, the State could explore that issue without having produced Carson's undisclosed opinions to appellee. After the bill of exceptions, appellee further argued that the witness had not shown that the waiver of the imposition of codes was reasonably probable. The parties reiterate these arguments on appeal.

Appellee's primary objection was that Carson never disclosed his opinion that the buildings could be reconfigured to preserve the existing use. The rules of civil procedure provide:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P. 193.6(a). Carson's disclosed opinion was that the condemnation rendered the property unsuitable for its current use and that redevelopment would trigger the application of City codes. He freely admitted that he had not alerted appellee that on the morning of trial he developed the new opinion that redevelopment of the property could occur at minimal cost and, with a waiver, without application of City codes. The State did not attempt to show good cause, absence of surprise, or absence of unfair prejudice.

The State instead contends that appellee opened the door to testimony rebutting Carson's testimony regarding modifications that would trigger imposition of City codes. The State's argument that it is entitled to rebut testimony introduced by its adversary may be generally true, but the adversary is entitled to insist that such entitlement is limited to evidence timely produced in discovery. *See* Tex. R. Civ. P. 193.6. This rule may be waived if the evidence adduced by the adversary exceeds the scope of discovery and is surprising. *See Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 4 (Tex. 1994) ("A party's failure to supplement discovery to disclose a material

10

change in an expert's opinion may provide good cause for an adverse party's failure to designate rebuttal experts who become necessary only to counter the unanticipated testimony.") Here, however, the State attempted to use the undisclosed opinion of its expert to rebut the disclosed opinion of that same expert; this is antithetical to the purpose of the discovery rules. The State argues that appellee cannot object to testimony regarding the subject of testimony elicited without objection or by appellee itself. But appellee elicited testimony within the parameters of the previously disclosed opinion that the current uses of the property could not be preserved without expensive reconfiguration. There was no testimony adduced that resembles that which the court excluded. We cannot say that the court abused its discretion by concluding that appellee did not thereby open the door to undisclosed opinions from the State's expert.

Even if appellee did open the door enough to sweep away the limits of the discovery rules, witnesses testifying in condemnation cases may testify about modifications of property that are possible under a changed regulatory environment only if the trial court finds that the necessary regulatory changes are reasonably probable to occur. *See City of Austin v. Cannizzo*, 267 S.W.2d 808, 815 (Tex. 1954). Carson acknowledged that his theory that a user could maintain the current use of the property by demolishing the office building and relocating its functions to the warehouse would require the City to waive its codes, and that the City "had not been totally consistent" in granting such waivers even when the landowner wanted to make modifications that would preserve the preexisting non-conforming use of the property. He stated, "From my understanding and knowledge of the condemnation ordinance, and how it is handled, I believe [a waiver could be granted], but I cannot say it reaches the level of reasonable probability because I did not check it out

11

with anybody in the City." Based on this record, we find no abuse of discretion in the trial court's exclusion of testimony about Carson's undisclosed theory regarding how the current use (and, hence, value) of the property could be maintained by reconfiguration of the property.[4]

## CONCLUSION

Having resolved all issues raised on this appeal in favor of the judgment, we affirm the judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: September 11, 2003

---

[4] The State also argues for the admission of evidence regarding modifications that would not trigger the imposition of City codes or require changes in the applicable City codes. We need not consider such arguments because both the question that prompted the original objection and the State's bill of review pertain to only one topic—the regulatory effect from demolishing the office building and relocating its functions.

12