In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-04-483 CV


____________________



IN THE INTEREST OF T.R.E., D.E., S.L.R., AND K.J.P.







On Appeal from the County Court at Law No. 4


Montgomery County, Texas


Trial Cause No. 03-06-04600-CV


(Consolidated with Nos. 04-05-03811-CV and 04-07-05315-CV)






MEMORANDUM OPINION


 Jacquelyn Irene Estes and Robert O. Estes, Jr., appeal the termination of their
parental rights in a proceeding brought by the Texas Department of Family and Protective
Services ("the Department"). (1) They filed separate briefs raising different issues. We hold
that Jacquelyn Estes waived her complaint regarding the timeliness of the trial court's final
order, hold the evidence is legally and factually sufficient to support the judgment, and
affirm the judgment as to each appellant. 

 Jacquelyn Estes contends "[t]he Department was precluded from proceeding with
its claims regarding T.R.E. because the facts alleged by the Department in its Petition filed
on July 8, 2004, were the same facts alleged in the Petition filed by the Department on
June 25, 2003." The Department was appointed as temporary sole managing conservator
of T.R.E. on June 25, 2003. (2) The Department filed a new petition as to T.R.E. on July
8, 2004, and the trial court named the Department as temporary managing conservator that
day. To the allegations of conduct endangerment and condition endangerment contained
in the original petition, the new petition added allegations of non-support and non-compliance as to Jacquelyn Estes and added allegations of non-support and conviction for
aggravated sexual assault of a child as to Robert Estes. Jacquelyn Estes argues for the first
time on appeal that the trial court erred in permitting the Department to proceed on its new
petition. 

 Unless the trial court has rendered a final order on the first Monday after the first
anniversary of the date the court appointed the Department as temporary managing
conservator, the termination suit must be dismissed. Tex. Fam. Code Ann. § 263.401(a)
(Vernon Supp. 2005). The trial court may extend the deadline for up to 180 days if, by
the Monday after the first anniversary date, the court finds that continuing the
Department's conservatorship is in the child's best interest and renders an extension order. 
Tex. Fam. Code Ann. § 263.401(b) (Vernon Supp. 2005). After granting an extension,
the trial court must render a final order within the 180-day period or dismiss the suit. 
Tex. Fam. Code Ann. § 263.401(c) (Vernon Supp. 2005). Failure to do so subjects the
suit to being dismissed. However, "[a] party to a suit under this chapter who fails to make
a timely motion to dismiss the suit or to make a motion requesting the court to render a
final order before the deadline for dismissal under this subchapter waives the right to
object to the court's failure to dismiss the suit." Tex. Fam. Code Ann. § 263.402(b)
(Vernon 2002). To be timely, the motion to dismiss must be made before the Department
concludes its case-in-chief. Id. 

 In this case, Robert Estes raised the issue at trial but Jacquelyn Estes did not. In
trials involving multiple respondents, each party must lodge her own objection to preserve
error. Beutel v. Dallas County Flood Control Dist., 916 S.W.2d 685, 694 (Tex. App.--Waco 1996, writ denied). We hold Jacquelyn Estes waived her right to object to the trial
court's failure to dismiss the suit. See Tex. Fam. Code. Ann. § 263.402(b) (Vernon
2002).

 The remaining issues challenge the legal and factual sufficiency of the evidence to
support the findings forming the basis for the judgment. 

 In a legal sufficiency review, a court should look at all the evidence
in the light most favorable to the finding to determine whether a reasonable
trier of fact could have formed a firm belief or conviction that its finding was
true. To give appropriate deference to the factfinder's conclusions and the
role of a court conducting a legal sufficiency review, looking at the evidence
in the light most favorable to the judgment means that a reviewing court
must assume that the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so. A corollary to this requirement is that
a court should disregard all evidence that a reasonable factfinder could have
disbelieved or found to have been incredible. This does not mean that a
court must disregard all evidence that does not support the finding. 
Disregarding undisputed facts that do not support the finding could skew the
analysis of whether there is clear and convincing evidence.


In the Interest of J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). If we determine that no
reasonable factfinder could form a firm belief or conviction of the truth of the matter in
controversy, we must conclude that the evidence is legally insufficient and render judgment
for the appealing parent. Id. In addressing the factual sufficiency of the evidence, we
consider whether, in light of the entire record, "the evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction" about the truth of the allegations. Id. 
If the evidence is factually insufficient, the appealing parent is entitled to a new trial. 


 The trial court found Robert Estes: (1) knowingly placed or knowingly allowed
K.J.P., T.R.E., and D.E. to remain in conditions or surroundings which endanger their
physical or emotional well-being; (2) engaged in conduct that endangered their well-being;
and (3) has been convicted or has been placed on community supervision for indecency
with a child. The record reflects that Robert Estes was prosecuted for indecency with a
child and on March 22, 2004, was placed on deferred adjudication community supervision
for seven years. His victim was Robert's then eleven-year-old daughter, K.J.P. Robert
Estes challenges only the trial court's finding that termination of his parental rights is in
the best interest of his children. 

 Robert Estes argues that the single documented indecent act committed upon his
child does not justify terminating his parental rights to all the children, considering he will
be on community supervision for the next seven years. Estes argues the children can be
adequately protected through supervised visitation because the Department will retain
permanent managing conservatorship. Thus, he argues, the children's emotional and
physical interests will not be sacrificed, and they will be able to continue receiving Social
Security Disability Income through him. The Department argues the appellant's violent
and sexually deviant behavior is so damaging to the emotional and physical well-being of
the children that termination of the parent-child relationship is in their best interest. 

 Prompt and permanent placement of the children in a safe environment is
presumably in their best interest. See Tex. Fam. Code Ann. § 263.307(a) (Vernon
2002). A number of factors are involved in determining whether the parents will provide
a safe environment or whether termination is in the best interest of the child. See Tex.
Fam. Code Ann. § 263.307(b) (Vernon 2002); Holley v. Adams, 544 S.W.2d 367, 371-72
(Tex. 1976). A victim of physical and sexual abuse by his own father, Robert began
drinking at nine years of age and reported a significant life-long struggle with alcohol
abuse. Robert claimed he had been sober for five months preceding the trial, but
Jacquelyn testified that Alcoholic Anonymous was not currently successful and Robert was
still drinking. (3) Jacquelyn insisted that the children were accustomed to Robert's drinking
and had never complained about it. Jacquelyn admitted she would call the police for
protection against Robert, but attributed his behavior to drunkenness and testified that
Robert would not drink in the future. Jacquelyn's mother, on the other hand, testified that
Robert is constantly violent, whether he is drunk or sober. Jacquelyn's twenty-year-old
daughter testified that she and Robert "boxed" after he got drunk, and claimed that two
years ago she moved to California to escape his drunkenness. However, she denied that
Robert physically abused any of the other children. 

 Robert was convicted of assault family violence in 2002. One psychologist's report
stated that Robert admitted to one arrest for assault and three for child abuse. The
children's guardian ad litem testified that the three older children reported a pattern of
physical abuse and fights involving throwing objects. Professionals and family members
alike acknowledged that the children are extremely frightened of Robert. Only Robert's
brother testified the children were not scared of Robert. Other than an incident in which
the neighbors complained because Robert let the children swim half naked in the front
yard, the brother never saw any inappropriate behavior and reported the children were well
bonded with Robert, who played with the children and allowed them to "crawl all over
him." 

 The paternal grandmother with whom the Department placed S.L.R. testified
S.L.R. told her that Robert had touched all three girls and their mother knew about it. The
professional counselor treating S.L.R. confirmed the report of Robert's repeated physical
and sexual abuse of K.J.P. and T.R.E. and their mother's awareness of the activity. While
speaking with the counselor, S.L.R. also described physical abuse, such as hair pulling and
being hit, by both Robert and Jacquelyn. 

 Roger Sanders, a clinical psychologist with ten years of experience treating sexual
offenders, testified that in his experience treated sexual offenders had only a five to ten
percent recidivism rate. Sanders agreed that Robert Estes presents a continuous risk to his
children and should not be placed in the home. In his opinion, however, Robert fell into
a low-to-medium range on the State's risk assessment tool based on age, marital status, and
lack of prior stranger victims. Sanders thought that at some point there would be a
reduction in risk such that with substance abuse screening home placement could be
considered in the future. William Schmidt, a registered sex offender treatment provider,
testified that Robert had been regularly attending his deaf offender group since July. In
his opinion, Robert would be at minimal risk for reoffense if he was not under the
influence of alcohol and visited the children under supervision. Schmidt felt he might be
able to better determine whether Robert could be rehabilitated and have a relationship with
his children next July, if Robert met the goals he set for himself. Michael R. Gilhausen,
a psychologist who evaluated Robert Estes in June 2003 at the Department's request,
diagnosed Robert as a pedophile. He could not recommend even supervised visitation. 
 

 Robert Estes contends he is at a low risk for reoffense and that supervised visitation
will enable the children to continue their relationship with him. Given the evidence of his
abusive behavior and the three older children's fear of their father, the trial court could
reach a firm belief that any form of continued relationship with their father will be harmful
to the children. Robert Estes directs our attention to the treating psychologist's testimony
that supervised visitation would be appropriate. The witness explained that his opinion,
based entirely upon information obtained through Robert and his probation officer,
depended upon successful treatment in a twelve-step program. In essence, the appellant
admits to some of the conduct he committed and has made some effort to obtain treatment,
but he has not shown significant progress. He bears the potential to not be an active
menace to his children, but today he cannot even be left alone with them. Even viewed
in a neutral light, and considering the evidence of Robert's efforts to obtain treatment, the
record supports the trial court's finding that termination of Robert Estes's parental rights
is in the best interest of K.J.P., T.R.E., and D.E. 

 The trial court found Jacquelyn Estes: (1) knowingly placed or knowingly allowed
K.J.P., S.L.R., T.R.E. and D.E. to remain in conditions or surroundings which endanger
their physical or emotional well-being; and (2) engaged in conduct or knowingly placed
the children with persons who endangered their well-being. According to the Department,
Robert had a long history of alcohol abuse and physical abuse towards Jacquelyn and the
children, the sexual abuse was not limited to one incident with one daughter, and Jacquelyn
minimized the danger Robert presented to the children and failed to separate from Robert
despite the threat he posed to her children. Jacquelyn Estes argues there is legally and
factually insufficient evidence of endangering conditions and endangering conduct and
challenges the finding that termination of the parental relationship will be in the children's
best interest. 

 In addressing the issue of conduct endangerment, Jacquelyn argues that the single
documented incident of Robert committing an indecent act on their daughter is insufficient
to establish the course of conduct typically required to support a finding of conduct
endangerment by Jacquelyn. The evidence of additional family violence and sexual abuse
cannot support an endangerment finding, she argues, because the Department failed to
provide direct testimony that it occurred. Jacquelyn Estes argues that her failure to
separate from Robert cannot supply the basis for termination because it occurred after the
children were taken into protective custody. She also contends the Department failed to
establish that she continued to have a relationship with Robert, and that the Department
failed to prove that she would be a danger to the children in the future. In addition, her
past conduct regarding Robert, Jacquelyn claims, is attributable to sign language
interpreters who inadequately communicated the Department's requirements to successfully
implement the family service plan. 

 To the extent the Department claims Jacquelyn failed to protect the children from
Robert's endangering conduct, her act of placing the children with the endangering person
must be made knowingly. See Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon Supp.
2005). According to Jacquelyn, K.J.P. made the initial outcry to her. Jacquelyn did not
take K.J.P. to the doctor and did not report the abuse to the Department; an uncle
"snooping" through Jacquelyn's adult daughter's email notified the authorities. S.L.P.
told her grandmother that K.J.P. had informed Jacquelyn of the abuse, and Jacquelyn
blamed K.J.P. and S.L.P. The grandmother testified that S.L.R. is afraid of retaliation
by Jacquelyn because Jacquelyn incorrectly believed S.L.R. told others that Robert
molested the three girls. When S.L.R. overheard a conversation about the court
proceedings S.L.R. told her grandmother that Robert "did stuff" to all three girls and that
their mother was aware of the abuse. According to the grandmother, S.L.R. is fearful of
Jacquelyn because Jacquelyn "told them not to tell, absolutely not to tell." The counselor
testified that S.L.R. discussed at length the sexual abuse towards her sisters K.J.P. and
T.R.E. Jacquelyn counters that this testimony is not direct evidence, but she did not object
to its admission at trial. 

 We also find evidence in the record that Jacquelyn failed to shield her children from
Robert after the Department intervened. The caseworker testified Jacquelyn wanted the
Department to allow Robert to return to the home and understood it was not permitted
because of the criminal charges filed against him. She repeatedly asked questions through
emails and tried to have supervisors intervene, but she knew Robert was not allowed
around the children. Although the family service plan required the Esteses to maintain
separate domiciles, Robert was at the home when the children were removed. Jacquelyn
and Robert conceived D.E. while the Department was working with the family. Robert
was present at the hospital in Dallas when D.E. was born. Jacquelyn claimed she was in
Dallas and had no one else to take her to the hospital, but did not explain what they were
doing in Dallas together. In addition, the guardian ad litem observed Jacquelyn telling
K.J.P. not to tell anyone that Jacquelyn was pregnant with D.E. and that her leaving town
was a "hush, hush secret." Although Jacquelyn insisted they had separated, three or four
months earlier she informed her mother that she was seeing Robert. Jacquelyn's adult
daughter claimed she had been with Jacquelyn for the preceding four months and had not
seen Robert. The daughter's boyfriend testified that he lived with the two women and
Jacquelyn had not been seeing Robert. On the other hand, the daughter also admitted that
Jacquelyn never left Robert, and she has continued to allow the children to be around
Robert knowing that he has unaddressed problems. 

 According to Dr. Gilhausen, the risk in letting the children remain with Jacquelyn
is that she will resume her relationship with Robert and arrange some way for him to have
contact with the children. His concern was echoed by the adult members of the family. 
Jacquelyn believes that Robert will get better and they will be a family again. 

 Jacquelyn Estes contends the evidence of conduct endangerment is insufficient
because the events relied upon to support the conduct endangerment finding are remote in
time. See Hendricks v. Curry, 401 S.W.2d 796, 800 (Tex. 1966). In this case, however,
the trial court could reasonably form a firm conviction that the endangering conduct
persists. Although the Department largely relied upon hearsay to support the
endangerment finding, the evidence was not objected to at trial and was not shown to be
unreliable. We hold the evidence is both legally and factually sufficient evidence to
support the trial court's finding of conduct endangerment. Because the evidence is
sufficient on that ground, we need not address the appellant's issue regarding condition
endangerment. See In the Interest of A.V., 113 S.W.3d 355, 362 (Tex. 2003).

 Of the non-exhaustive factors involved in determining whether the parents will
provide a safe environment or whether termination is in the best interest of the child,
including the factors listed in Tex. Fam. Code Ann. § 263.307(b) (Vernon 2002) and
Holley, 544 S.W.2d at 371-72, we focus here on those argued in the appellant's brief. 
Jacquelyn Estes contends the Department's evidence regarding the emotional and
psychological well-being of the children is limited to evidence from the treating counselor
for S.L.R., and that the evidence that the children do not wish to have any contact with
their mother is limited to a statement attributed to S.L.R. by her grandmother. We
disagree with her assessment of the record. The caseworker testified the three older
children communicated to her that they did not want to live with their mother. The
Department caseworker testified that the interactions she observed between Jacquelyn and
the girls were not healthy. She noted that Jacquelyn communicated with K.J.P. and
ignored the others. Jacquelyn put too much burden on K.J.P., telling her secrets, and
demeaned S.L.R. by telling her she was fat. Visits with S.L.R. ceased at the child's
request after K.J.P. and T.R.E. moved to California to live with their maternal
grandmother. The professional counselor treating S.L.R. testified that S.L.R. adamantly
wants to remain in her current placement with her paternal grandparents. Jacquelyn's
mother testified that Jacquelyn would say mean things to T.R.E. and let her know that she
was angry with K.J.P. According to the grandmother, T.R.E. talks more about her foster
mother than her biological mother. The guardian ad litem testified that only T.R.E.
expressed any interest in seeing Jacquelyn and that K.J.P. and S.L.R. never wanted to see
her again. 

 To support her claim that the trial court erred in finding that termination is in the
best interest of the four children, Jacquelyn Estes also contends that the Department failed
to adequately explain the need for her to sever her relationship with Robert Estes. The
Department's witnesses controverted Jacquelyn's assertion that the Department failed to
adequately communicate with her. The caseworker testified that they communicated in
writing when no interpreter was available. The family-based safety services worker
testified she knew Jacquelyn understood because they communicated through emails and
on the computer. The adult daughter testified that her mother is very educated in sign
language. Because she was raised in a "deaf home," the guardian ad litem knew how to
communicate with Jacquelyn. She testified that she worked hard to make Jacquelyn
understand that she had to stay away from Robert. 

 Jacquelyn Estes argues it is not enough that the children would be better off living
somewhere else; however, prompt and permanent placement of the children in a safe
environment is presumably in their best interest. See Tex. Fam. Code Ann. § 263.307(a)
(Vernon 2002). The trial court could reasonably form a firm belief that if the children
remained with their mother, she would not protect them from Robert and would expose
them to physical and sexual abuse. When the evidence is viewed in a neutral light, and
considering Jacquelyn's explanations for her failure to take active steps to protect the
children from Robert, the disputed evidence is not so strong as to cast doubt on the trial
court's conclusions regarding the best interest of the children. 

 We find no error in the judgment. Accordingly, the judgment is affirmed.

 AFFIRMED.




 ______________________________

 STEVE McKEITHEN

 Chief Justice




Submitted on October 10, 2005

Opinion Delivered December 8, 2005


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Jacquelyn Irene Estes is the mother of T.R.E., D.E., S.L.R., and K.J.P. Robert
O. Estes, Jr., is the father of T.R.E., D.E., and K.J.P., but not S.L.R. 
2. The Department acquired conservatorship of K.J.P. and S.L.R. on July 29, 2003, 
and the trial court ordered a 180-day extension on July 13, 2004. D.E. was born May 16,
2004, and the trial court appointed the Department as temporary managing conservator
four days later. The Department closed its case-in-chief on October 19, 2004, and the trial
court signed the termination order on October 26, 2004. 
3. Both Robert and Jacquelyn are deaf and speak through sign language. They
testified through an interpreter.